UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(Houston Division)

| | |
|---|---|
| KHAN, MR. IMRAN E.<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HOUSTON, et al.,<br><br>Defendants. | Civil Action No. 4:23-CV-00998 |

### AMENDED COMPLAINT

NOW COMES Plaintiff, KHAN MR. IMRAN E. by and through undersigned counsel, Tully Rinckey P.L.L.C., and as for his amended complaint against Defendants CITY OF HOUSTON, et al., (hereinafter, "Defendants"), states:

### NATURE OF THIS ACTION

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. 4301 et seq. City of Houston et al. violated Mr. Khan rights by terminating him on the basis of his membership in the United States Marine Corps.

2. This action is brought pursuant to 38 U.S.C. §4311.

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964.

### THE PARTIES

4. Plaintiff Khan Mr. Imran E. (hereinafter, "Mr. Khan" or "Plaintiff") is an individual resident of Harris County, Texas.

5. Mr. Khan was born in Pakistan and immigrated to the United States in 2003.

6. Mr. Khan is Muslim.

7. Mr. Khan enlisted in the U.S. Marine Corps in 2005 and served a combined eight years of active and reserve duty. He was honorably discharged and received a one hundred percent

VA disability rating for Post Traumatic Stress Disorder (PTSD), Traumatic Brain Injury (TBI), depression, anxiety, and other injuries.

8. The City of Houston, Texas (hereinafter "Houston") is a municipality.
9. Houston Police Department (hereinafter "Department") is a Department of Houston.
10. Prior to January 22, 2011, Mr. Khan was employed as a Houston Police Officer.

## JURISDICTION

11. This is an action for damages and for injunctive relief pursuant to the Uniformed Services Employment and Reemployment Rights Act, as codified at 38 U.S.C. § 4301, et seq. (hereinafter "USERRA"), and is within the jurisdiction of this Court pursuant to 38 U.S.C. § 4323(b)(2) and 28 U.S.C. § 1331.
12. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1367, and 42 U.S.C §§ 2000e-5, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.
13. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

14. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, an entity that operates within the state of Texas, and which actions occurred within this judicial district. 28 U.S.C. § 1391.
15. Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within this district.

## STATUTE OF LIMITATIONS

16. USERRA does not have a statute of limitation. See 38 U.S.C. § 4327.

## EXHAUSTION OF REMEDIES

17. Plaintiff filed an Equal Employment Opportunity Commission (EEOC) charge of discrimination against Defendant on November 1, 2021.

18. On the date of December 19, 2022, Plaintiff received a Notice of Right to Sue letter issued by the EEOC.
19. On March 17, 2023, Mr. Khan filed an employment discrimination complaint under Title VII of the Civil Rights Act of 1964, in the United States District Court, Southern District of Texas, Houston Division.

**FACTS**

A. <u>Mr. Khan's Background, Military Service, and Disability</u>

20. Mr. Khan was born in Pakistan and immigrated to the United States in 2003. Soon after he felt the call of service to the Nation that welcomed him from his place of birth, so he enlisted in the U.S. Marine Corps in 2005. He served a total of eight years within the Marine Corps with both active and reserve service and became a naturalized U.S. citizen during his time in the service. He completed a combat deployment in Afghanistan in 2010 which resulted in PTSD, TBI, depression, and other related ailments. Achieving the rank of sergeant, Mr. Khan was honorably discharged and received a VA disability rating of one hundred percent for all his service related injuries. To this day, he has undergone multiple surgeries and is required to take numerous medications and injections for his conditions that effect his everyday quality of life. Mr. Khan speaks with a Pakistani accent and combined with the TBI from a severe concussion he received in service, he sometimes has difficulty communicating and being understood.
21. Although suffering from these severe medical issues, he attended community college upon reentering the civilian sector and achieved his associates of arts degree. He then enrolled in the engineering school of the University of Houston, Texas to pursue a Bachelor of Science, using the GI education bill which he earned from his honorable military service. While taking college courses, he began the process of becoming a police officer with the City of Houston Police Department.
22. When Mr. Khan applied to the join the Houston Police Department, the Department was aware of his military service and his injuries. Mr. Khan disclosed this information as part of the application process. The Department was aware that Mr. Khan was on various prescribed medications and that he would need continued medical treatment, including multiple surgeries.

23. On July 17, 2017, Mr. Khan became a police trainee. He successfully completed initial police training and on January 23, 2018, he was sworn in as a police officer, and placed on the required probationary period for new officers. On July 17, 2018, one year after becoming a police trainee, and successfully completing his probationary period, he was reclassified as a fully qualified police officer. As a new police officer, Mr. Khan worked full time and on the night shift in order to take engineering classes at the University of Houston during the day.

   B. Mr. Khan is the victim of discrimination and disparate treatment based on his race, national origin, religion, and status as a disabled Marine Corps Veteran.

24. Mr. Khan faced ridicule, torment, and mockery from his fellow officers and superiors, based on numerous factors, to include his race, national origin, religion, disabled veteran status, and even his accent. He would often be mocked for how he spoke and the difficulty he may sometimes have communicating, which was exacerbated by his TBI. He would often be called a terrorist because he was from Pakistan. Because it was known that he is a disabled veteran with combat experience, Mr. Khan would often be ridiculed that he would snap or "go crazy," especially around the fourth of July Independence Day holiday. The implication of "going crazy" around the fourth of July being the fireworks would trigger his PTSD from his time in combat.

25. Mr. Khan, along with other officers that were persons of color, would be referred to as the "terrorist group" based on the color of their skin.

26. While on duty, Mr. Khan would often be isolated from his peers, which was encouraged by his supervisor Sergeant Benjamin Stewart (Sgt Stewart). Mr. Khan would often have trouble finding another officer willing to ride his vehicle with him during his shift. If anyone would agree to ride with him, they too would often face ridicule until they left Mr. Khan alone. On many occasions, he would be given the "pool vehicle" when others were available. The "pool vehicle" was the old, back-up vehicle that was often of a lower standard than the other vehicles. Mr. Khan would be subject to vehicles with poor or broken lights, issues with suspension, or other problems. Having a vehicle with broken lights was especially troubling in that he worked the night shift.

27. Mr. Khan faced significant disparate treatment from his supervisor, Sgt Stewart. Sgt Stewart mocked Mr. Khan's accent, made rude hand gestures behind his back, and singled him out in

front of other officers in order to ridicule him.

28. In August of 2020, Mr. Khan made a verbal complaint to his superior, Lieutenant Chen regarding the disparate treatment he was receiving from Sgt Stewart. Mr. Khan requested to switch to another unit where Sgt Stewart would no longer be his supervisor. Mr. Khan was approved to switch units, but torment would not stop there.

29. Mr. Khan requested to switch units with the Department in August 2020 based on the disparate treatment he received from Sgt Stewart.

C. The Department made a frivolous complaint against Mr. Khan leading to his constructive discharge.

30. On August 3, 2020, while on duty, Mr. Khan was approached by a civilian who claimed he was involved in a vehicle accident at a different location. Mr. Khan followed the complainant to the location of the purported accident. The complainant claimed he got into a fight with his two passengers and while distracted, he struck another vehicle. The complainant stated the passengers took his money and glasses and left in another vehicle. No other vehicle nor debris was found at the location.

31. Based on the totality of the circumstances and his training as a police officer, Mr. Khan did not believe the complainant was being completely honest about his report of an accident. There was no other vehicle at the crash location, no signs of an accident other than minor damage to the complainant's vehicle. Mr. Khan believed the complainant's motivation was to request a crash report for insurance purposes—for which he changed his mind when he learned his liability insurance would likely not fix his vehicle. The purported robbery also did not make sense in that the complainant still had his wallet, driver's license, and cellphone with him.

32. Mr. Khan did not refuse nor avoid writing a report for the encounter. Mr. Khan's shift ended at 0600 hours, and he completed the report the next day on August 4, 2020. Mr. Khan completed the report and was told it was approved and there were no issues with the report.

33. In September 2020, Mr. Khan once again reported through his chain of command, discrimination and retaliation by Sgt Stewart that continued even after he switched units and Sgt Stewart was no longer Mr. Khan's supervisor. No investigation was made into his complaints against Sgt Stewart.

34. Instead, soon after Mr. Khan made his complaint, on September 14, 2020, a complaint was made by Sgt Gromyko against Mr. Khan for "Failure to Take Action" and "Completing Official Reports" regarding the purported vehicle accident on August 3, 2020—over a month prior.

35. Sgt. Gromyko was purportedly conducting a routine audit of Body Worn Camera (BWC) and happened to occur after Mr. Khan made is complaint of discrimination.

   D. <u>Sgt Stewart retaliated against Mr. Khan in response to his complaint, even after Mr. Khan switched units within the Department.</u>

36. After Mr. Khan switched units in the Department in order to get away from Sgt Stewart and his discriminatory practices, Mr. Khan nevertheless was harassed by Sgt Stewart. Sgt Stewart's discriminatory and harassing actions included incidents where he would isolate Mr. Khan by calling others away, leaving Mr. Khan alone on patrol during the night shift. For example, Mr. Khan and another squad car would be parked at a single location at night, for safety purposes. Sgt Stewart, knowing other squad cars were with Mr. Khan, would call them away for unofficial reasons, leaving Mr. Khan alone. Sgt Stewart would also often arbitrarily designate Mr. Khan as available to receive calls and respond to cases when Mr. Khan should have been designated as unavailable due to performing other official tasks while on duty. This would lave him little to no time to work on the cases properly and complete the ones was already assigned.

37. Soon after Mr. Khan made his second complaint against Sgt Stewart in September and the frivolous complaint was made against Mr. Khan, the Department escalated their unfounded complaint and subjected Mr. Khan to interrogation on October 14, 2020 for the incident that occurred two and a half months prior.

38. Mr. Khan was relieved of his duties as a police officer and placed on an "At Home" status, by Chief of Police Art Acevedo, effective Monday, January 11, 2021, effective at 1230 hours. This punishment was for the purported misconduct in failing to complete a report in August. During this time, Plaintiff was required to report into the Department via phone every morning, Monday through Friday. He was not allowed to seek employment elsewhere, nor pursue educational classes during this time. If he left his residence during business hours, he would first need to request and be granted permission.

39. In response to the Department's disproportionate treatment for a late filed report and their lackadaisical response to Mr. Khan's multiple reports of discrimination and retaliation, Mr. Khan felt he was forced to resign before more unfair and unfounded allegations of misconduct were laid on him.

40. On January 22, 2021, Mr. Khan submitted his letter of resignation to the Department's Chief of Police, Art Acevedo.

41. Mr. Khan's resignation approved by Chief Acevedo on January 22, 2021. On Mr. Khan's letter is a handwritten note by Chief Acevedo that states, "No rehire!!!"

## FIRST CAUSE OF ACTION
(Discrimination under USERRA, 38 U.S.C. §§ 4301 et seq.)

42. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

43. The prevailing purpose of USERRA is to encourage non-career military service, minimize disruption based on such service, and prevent discrimination against service members. See 38 U.S.C. § 4301. The United States Supreme Court has repeatedly recognized that USERRA is "to be liberally construed for the benefit of those who left private life to serve their country." See, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946). As such, USERRA prohibits discrimination and reprisal against members of the uniformed service.

44. USERRA § 4311 (a) states in pertinent part that, "a person who is a member of…uniformed service shall not be denied…retention in employment...or any benefit of employment by an employer on the basis of that membership..." The term "benefit of employment" is quite broad and includes a service member's right to freedom from harassment and a hostile work environment. See, 38 U.S.C. § 4303(2).

45. The statute goes on to state that, "[a]n employer shall be considered to have engaged in actions prohibited ...under subsection (a), if the person's membership…service…or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership…service…or obligation for service." § 43ll(c)(l). As such, once an employee shows that his military service was a "motivating factor" in termination, the employer bears the burden of proving that it would have terminated the employee's position in the absence of the employee's service.

46. At all relevant times, herein, Plaintiff was a veteran service member of the U.S. Marine Corps.

47. The Department violated USERRA § 4311(a) by wrongfully harassing and mocking Mr. Khan for how he spoke and the difficulty he may sometimes have communicating, which was exacerbated by his combat related TBI. He was subject to constant anti-military animus from his fellow officers in the Department. He would often be called a terrorist because he was from Pakistan, despite his U.S. Marine Corps service. Because it was known that he is a disabled veteran with combat experience, Mr. Khan would often be ridiculed that he would snap or "go crazy," especially around the fourth of July Independence Day holiday. The implication of "going crazy" around the fourth of July being the fireworks would trigger his PTSD from his time in combat.

48. Mr. Khan's military service and status as a disabled Marine Corps combat veteran was a motivating factor in the actions taken by the Defendants. Mr. Khan suffered from PTSD, TBI from a concussion, depression, anxiety, and other service-connected ailments. He has required multiple surgeries and to this day, is on multiple prescribed medications and injections.

49. As a direct and proximate result of the conduct by Defendants, Mr. Khan has suffered injury including, but not limited to constructive termination, denial of promotion, loss of wages, job assignments, retirement savings, time in service of the Department, benefits of employment, and has incurred pain and suffering from the stress and uncertainty surrounding his termination.

50. The fact that Mr. Khan was investigated for misconduct—purportedly for simply filing a late report—makes it abundantly clear that his work environment was hostile.

51. Defendant's violation of USERRA was willful and in reckless disregard of Mr. Khan's rights under the statute.

## SECOND CAUSE OF ACTION
(Discrimination on the Basis of Race in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)

52. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

53. Mr. Khan is South Asian. He was born in Pakistan and immigrated to the United States in 2003.

54. He would often be called a terrorist because he was from Pakistan, despite his U.S. Marine Corps service, combat deployment, and naturalized U.S. citizenship.

55. Mr. Khan, along with other officers that were persons of color, would be referred to as the "terrorist group" based on the color of their skin and race.

56. Because of his race, Mr. Khan was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including fraudulent allegations of Mr. Khan engaging in misconduct for a late filed report, resulting in his forced resignation.

57. The Defendant's improper adverse actions materially affected the terms, privileges, and conditions of Mr. Khan's employment. Defendant knew that Mr. Khan is a South Asian Pakistani-American prior to subjecting him to the aforementioned material adverse employment actions and was aware of the discrimination he was subjected to because of his race.

58. Mr. Khan's race was a determining factor in Defendant's unlawful conduct toward him. The reasons proffered by Defendant for Mr. Khan's purported misconduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

59. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Mr. Khan because of his race.

60. Defendant discriminated against Mr. Khan because of his race by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Mr. Khan.

61. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Mr. Khan suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies.

62. Mr. Khan was humiliated, embarrassed, and made to endure a great amount of pain and suffering. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

63. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

## THIRD CAUSE OF ACTION

(Discrimination on the Basis of National Origin in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)

64. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

65. Mr. Khan was born in Pakistan and immigrated to the United States in 2003.

66. He would often be called a terrorist because he was from Pakistan, despite his U.S. Marine Corps service, combat deployment, and naturalized U.S. citizenship.

67. Mr. Khan, along with other officers that were persons of color, would be referred to as the "terrorist group" based on Mr. Khan's national origin of Pakistan.

68. Sgt Stewart and other officers would mock his Pakistani accent. His accent, combined with his service related TBI and concussion, would sometimes make it difficult for him to be understood, which led to more ridicule and mockery.

69. Because of his national origin, Mr. Khan was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including fraudulent allegations of Mr. Khan engaging in misconduct for a late filed report, resulting in his forced resignation.

70. The Defendant's improper adverse actions materially affected the terms, privileges, and conditions of Mr. Khan's employment. Defendant knew that Mr. Khan is Pakistani-American prior to subjecting him to the aforementioned material adverse employment actions and was aware of the discrimination he was subjected to because of his national origin.

71. Mr. Khan's national origin was a determining factor in Defendant's unlawful conduct toward him. The reasons proffered by Defendant for Mr. Khan's purported misconduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

72. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Mr. Khan because of his national origin.

73. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Mr. Khan suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies.

74. Mr. Khan was humiliated, embarrassed, and made to endure a great amount of pain and

suffering. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

75. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

## FOURTH CAUSE OF ACTION
(Discrimination on the Basis of Color in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)

76. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

77. Because of the dark color of his skin, Mr. Khan was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including fraudulent allegations of Mr. Khan engaging in misconduct for a late filed report, resulting in his forced resignation.

78. Mr. Khan, along with other officers that were persons of color, would be referred to as the "terrorist group" based on the color of their skin and race.

79. The Defendant's improper adverse actions materially affected the terms, privileges, and conditions of Mr. Khan's employment. Defendant knew that Mr. Khan is Pakistani-American prior to subjecting him to the aforementioned material adverse employment actions and was aware of the discrimination he was subjected to because of the color of his skin.

80. The color of Mr. Khan's skin was a determining factor in Defendant's unlawful conduct toward him. The reasons proffered by Defendant for Mr. Khan's purported misconduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

81. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Mr. Khan because of the color of his skin.

82. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Mr. Khan suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies.

83. Mr. Khan was humiliated, embarrassed, and made to endure a great amount of pain and suffering. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

84. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

### FIFTH CAUSE OF ACTION
(Discrimination on the Basis of Reprisal in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, et. seq and the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et seq.)

85. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.
86. Mr. Khan suffered disparate treatment, mockery, and discrimination from his supervisor, Sgt Stewart. Mr. Khan made a verbal complaint through his chain of command and was ignored. No investigation was conducted into the allegations against Sgt Stewart.
87. Mr. Khan requested to change units which was approved. However, Sg Stewart retaliated against Mr. Khan for his complaint. He would continue to isolate Mr. Khan and disparage him in front of other officers.
88. Mr. Khan filed a report the following day of an incident, as his shift ended at 0600 hours. This report was approved and Mr. Khan was told there were no issues. However, over a month later, once Mr. Khan made several complaints against Sgt Stewart for discrimination and maltreatment, there was suddenly a problem with the report and Mr. Khan as subject to a frivolous complaint of misconduct.
89. The timing of this complaint against Mr. Khan is suspect and shows a clear motive for the Department to create a pretext complaint in order to force Mr. Khan to resign from the Department.
90. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Mr. Khan suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies.
91. Mr. Khan was humiliated, embarrassed, and made to endure a great amount of pain and suffering. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

92. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

### SIXTH CAUSE OF ACTION
(Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, et. seq and the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et seq.)

93. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.
94. As a result of Mr. Khan's protected status, as a disabled combat Marine Corps veteran, Mr. Khan's supervisor routinely humiliated him and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII.
95. Mr. Khan was regularly and continually subjected to harassing conduct that alleged throughout this Complaint, which created a hostile and abusive work environment.
96. Mr. Khan was subjected to a hostile work environment based on his race, religion, reprisal, national origin, and disabled Marine Corps combat veteran status.
97. Defendant's unlawful conduct was unwelcome.
98. Mr. Khan was subjected to harassment because his race and protected reporting activities and it unreasonably interfered and affected a term, condition, or privilege of his employment.
99. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate, or remedial action. Despite
100. Mr. Khan's complaints, the harassment continued unabated and increased over time.
101. By failing to take appropriate and effective remedial action against Mr. Khan's supervisors,
    Defendant acted with malice or with reckless or callous indifference to Mr. Khan's complaints.
102. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.
103. As a direct and proximate cause of Defendant's conduct alleged throughout this

Complaint, Mr. Khan suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies.

104. Mr. Khan was humiliated, embarrassed, and made to endure a great amount of pain and suffering. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

105. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

## REQUESTED RELIEF

106. WHEREFORE, Plaintiff respectfully requests that the Court enter judgement against Defendant and provide Plaintiff with the following relief:

107. Declare that Defendant's actions were in violation of USERRA's employment provision, 38 U.S.C. §4311;

108. Order Defendant to comply with the provisions of USERRA;

109. Order Defendant pay Plaintiff all amounts due to him for loss of wages and other benefits of employment cause by Defendant's violation of USERRA to include but not limited to costs of suit, inclusive of reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2);

110. Award Plaintiff liquidated damages in an amount equal to the amount of lost wages and other benefits of employment suffered by reason of Defendant's willful violations of USRRA, pursuant to 38 U.S.C. § 4323(d)(I)(C);

111. Reinstate Plaintiff into the position held previous to his termination pursuant to 38 U.S.C. § 4311;

112. Award monetary damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

113. Award reasonable attorney fees, costs, and expenses incurred for this action;

114. Order Defendant to institute a policy and procedure to be implemented against

discrimination;

115. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

116. Require supervisory training for the supervisors at issue herein;

117. Award equitable, declaratory, punitive, and injunctive relief; and

118. Award such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

119. Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted this 18th day of July 2023.

*Sean C Timmons*

_____
Sean Timmons
State Bar No.: 24067908
TULLY RINCKEY PLLC
18722 University Blvd., Ste. 235
Sugar Land, TX 77459
Telephone No.: (832) 240-3273
Facsimile No.: (832) 533-8999
STimmons@tullylegal.com
ATTORNEY FOR PLAINTIFF

Michael Fallings, Esq.
Managing Partner
Tully Rinckey, PLLC.
3420 Executive Center Drive, Suite 160
Austin, Texas 78731
mfallings@fedattorney.com
(512) 225-2822