## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS,
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IMRAN E. KHAN,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action NO.: 4:23-cv-00998** |
| | § | |
| **CITY OF HOUSTON, et al.** | § | |
| *Defendants.* | § | |

## DEFENDANT CITY OF HOUSTON'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE HANKS:

Defendant City of Houston, Texas, ("Houston," or "City") files this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support thereof states as follows:

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

I. NATURE AND STAGE OF THE PROCEEDINGS .................................................. 1

II. STATEMENT OF ISSUES AND LEGAL STANDARD OF REVIEW .................... 1

    A. Statement of Issues ......................................................................................... 1

    B. Standard of Review ......................................................................................... 2

III. STATEMENT OF UNDISPUTED FACTS .............................................................. 3

    A. Houston has strict policies of non-discrimination and non-retaliation. ........... 3

    B. Imran Khan was employed as a Houston police officer .................................. 4

    C. Khan was briefly supervised by Sgt. Benjamin Stewart ................................. 4

    D. IAD investigated Khan's failure to investigate/report an accident and robbery 5

    E. IAD determines that Khan violated HPD policy .............................................. 7

    F. The disciplinary review process is initiated, but not completed ...................... 8

    G. Khan resigns and then files suit ..................................................................... 10

IV. ARGUMENT ......................................................................................................... 10

    A. Plaintiff failed to exhaust administrative remedies as to (1) his claims under the Rehabilitation Act and (2) the Title VII claims based on acts occurring prior to January 5, 2021, so those claims are barred ....................................... 10

    B. The City is entitled to summary judgment on Plaintiff's claim for constructive discharge .................................................................................................... 144

    C. The City is entitled to summary judgment on Plaintiff's claim for unlawful retaliation ...................................................................................................... 16

        1. No prima facie claim of retaliation. ......................................................... 17

        2. The City has a legitimate non-retaliatory reason for its actions.................. 19

D.     The City is entitled to summary judgment on Plaintiff's USERRA claims.... 20

    1. No evidence of discrimination based on Plaintiff's military service .......... 21

       *a)*  *No hostile work environment* ................................................................. 22
       *b)*  *No adverse action* ................................................................................. 233

    2. No evidence of retaliation for any protected action. .................................. 23

    3. The City would have taken its employment actions in the absence of
       Plaintiff's military status. .......................................................................... 23

CONCLUSION ............................................................................................................ 24

CERTIFICATE OF SERVICE ..................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722 (S.D. Tex. 2014) ............................................ 17

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .................................................................. 2

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556 (5th Cir. 2001) ............................................. 15

*Caldwell v. Lozano*, 689 F. App'x 315 (5th Cir. 2017) ............................................... 15, 16

*Clark v. America's Favorite Chicken Co.,* 110 F.3d 295 (5th Cir. 1997) ......................... 3

*Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL 94297(5th Cir. Jan. 19, 2024) ...................................................................................................................................... 19

*EEOC v. EmCare, Inc.*, 857 F.3d 678 (5th Cir. 2017) ................................................. 18, 19

*Ernst v. Methodist Hosp. Sys.,* 1 F.4th 333  (5th Cir. 2021) .............................................. 11

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ...................................................... 22

*Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450 (5th Cir. 2013) ........ 16

*Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229 (5th Cir. 2001) ......................... 22

*Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305 (5th Cir. 2023) ........... 21, 23, 24

*Green v. Brennan*, 578 U.S. 547 (2016) .............................................................................. 14

*Heath v. Bd. of Supervisors for Southern Univ. and Agr. and Mech. College*, 850 F.3d 731 (5th Cir. 2017) ............................................................................................................. 12

*Hudson v. Lincare, Inc.*, 58 F.4th 222 (5th Cir. 2023) ................................................. 17, 18

*Infant v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839 (5th Cir. 2018) ......... 3

*Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*,90 F.4th 449 (5th Cir. 2024) ............................................................................................... 16, 17, 20

*Jones v. Anderson*, 721 F. App'x 333 (5th Cir. 2018) ......................................................... 3

*Kim v. Hospira, Inc.*, 709 F. App'x 287 (5th Cir. 2018) ...................................................... 2

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994 .................................................. 2, 3

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ..................................... 11, 12

*Nola Spice Designs, LLC v. Haydel Enter., Inc.*, 783 F.3d 527 (5th Cir. 2015) ................ 2

*Pegram v. Honeywell, Inc.*, 361 F.3d 272 (5th Cir. 2004) ................................................ 12

*Prewitt v. U.S. Postal Serv.*, 662 F.2d 292 (5th Cir. Unit A 1981) ............................ 10, 11

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) ................................. 19

*Sacks v. Texas S. Univ.*, 83 F.4th 340 (5th Cir. 2023) ...................................................... 14

*Smith v. Potter*, 400 Fed. Appx. 806, (5th Cir. 2010) .................................................. 10, 11

*Stewart v. Miss. Transp. Com'n*, 586 F.3d 321 (5th Cir. 2009) ........................................ 18

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ........................... 18

*Washington v. Allstate Ins. Co.*, 901 F.2d 1281 (5th Cir. 1990) ........................................ 3

*Watson v. FedEx Express*, Case No. 3:22-cv-01738-B-BT, 2023 WL 4534965 (N.D. Tex. Jun. 26, 2023) ............................................................................................................... 22

**STATUTES**

29 U.S.C. §§ 701 ................................................................................................ 1

29 U.S.C. § 794a(a)(1) ...................................................................................... 10

38 U.S.C. §§ 4301 .............................................................................................. 1

38 U.S.C. § 4311(b) ..................................................................................... 21, 23

38 U.S.C. § 4311(c). ......................................................................................... 21

42 U.S.C. §§ 2000e ............................................................................................ 1

42 U.S.C. § 2000e–3(a) .................................................................................... 16

42 U.S.C. § 2000e-5(e)(1) ................................................................................ 11

Federal Rules of Civil Procedure 56 .............................................................. i, 2

Texas Local Government Code § 143.120 ....................................................... 10

Texas Local Government Code § 143.1016 ..................................................... 10

# I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Imran E. Khan was formerly employed as a police officer by the Houston Police Department ("HPD"). He alleges in this lawsuit that the City of Houston discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 et seq. ("USERRA), and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, et seq. ("Rehabilitation Act") and that the City retaliated against him after he complained about the alleged discrimination. For the reasons detailed below, Defendant is entitled to summary judgment on all Plaintiff's claims.

This case is set for Docket Call on October 11, 2024. The discovery deadline has expired and this motion is timely filed. [Doc. 37].

# II. STATEMENT OF ISSUES AND LEGAL STANDARD OF REVIEW

## A. Statement of Issues

1. Whether Defendant is entitled to summary judgment on Plaintiff's claims under the Rehabilitation Act and the Title VII claims based on acts occurring prior to January 5, 2021, because Plaintiff failed to exhaust his administrative remedies as to those claims.

2. Whether the City is entitled to summary judgment on Plaintiff's Title VII claim for constructive discharge because he has no evidence of harassment that is severe or pervasive enough that a reasonable employee would have been compelled to resign, and he did not exercise all available options to resolve his employment concerns before quitting.

3. Whether the City is entitled to summary judgment on Plaintiff's Title VII claim for retaliation because Plaintiff has failed to support a prima facie claim, the City has expressed legitimate non-retaliatory reasons for the alleged adverse actions, and Plaintiff cannot show that the City's reasons are pretextual.

4. Whether the City is entitled to summary judgment on Plaintiff's USERRA claims because there is no evidence of discrimination based on Plaintiff's military status, no evidence of retaliation for any protected action, and the City has affirmatively shown that it would have taken its employment actions in the absence of Plaintiff's military status.

## B. Standard of Review

Summary judgment is warranted when the evidence shows no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Facts are considered material if they might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the records which it believes demonstrates the absence of a genuine issue of material fact." *Nola Spice Designs, LLC v. Haydel Enter., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal citation and alteration omitted). The movant can meet this initial burden by pointing to "the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (internal quotation and alteration omitted). While the movant must demonstrate the absence of a genuine issue of material fact, the movant does not need to negate the elements of the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994.

Once the burden shifts, the non-movant "cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Jones v. Anderson*, 721 F. App'x 333, 335 (5th Cir. 2018). Affidavits or deposition testimony asserting ultimate or conclusory facts and conclusions of law are also insufficient to defeat a competent motion for summary judgment. *Clark v. America's Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997). The non-movant must identify specific evidence in the record and articulate how that evidence supports the specific claim. *Infant v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839, 843 (5th Cir. 2018). Factual controversies are to be resolved in favor of the non-movant, "but only when…both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. However, there is no genuine issue for trial when the record, taken as a whole, indicates that no reasonable jury could return a verdict for the non-movant. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990).

### III.       STATEMENT OF UNDISPUTED FACTS

**A.    <u>Houston has strict policies of non-discrimination and non-retaliation.</u>**

Houston strictly prohibits discrimination in employment and employment opportunities on the basis of any protected category, including but not limited to, race, national origin, religion, and disability. (Ex. A: Houston Ordinance art. XIV, § 2-452; Ex. B: E.O. 1-50). HPD, through its General Orders, also prohibits discrimination and workplace harassment based on protected characteristics. (Ex. E: G.O. 300-11). HPD requires employees who witness prohibited conduct or believe they are the subject of prohibited conduct to report the conduct immediately. (*Id.* § 7). Houston and HPD strictly prohibit retaliation against anyone for reporting prohibited conduct, assisting in making a

prohibited conduct complaint, cooperating in a prohibited conduct, or otherwise opposing conduct in violation of any Federal, State, or local laws or ordinances, or City anti-discrimination policies. (E.O. 1-50 § 8; G.O. 300-11 § 4). HPD's Internal Affairs Division ("IAD") is responsible for investigating alleged discriminatory and retaliatory acts by HPD officers and employees. (Ex. C: G.O. 200-03).

## B. **Imran Khan was employed as a Houston police officer.**

Plaintiff Imran Khan was hired by Houston as an HPD Police Trainee on July 17, 2017. (Ex. H-11: Employee Resume Report). Upon his employment, Khan signed an Acknowledgement of Receipt of Guide for New Municipal Employees and affirmed, "it will be my responsibility to become aware of the full policies, procedures, Civil Service rules and codes that cover my employment." (Ex. H-3: Acknowledgement).

After graduating from the Police Academy, Khan was sworn in as a police officer and completed a six-month probationary period. As a sworn police officer in HPD, Khan was expected to know and abide by the laws and ordinances he was charged with enforcing, and all department orders, directives, duties, and procedures governing his assignments. (Ex. D: G.O. 200-08, § 3).

## C. **Khan was briefly supervised by Sgt. Benjamin Stewart**

On August 25, 2018, Khan transferred to the Westside Division as a patrol officer, where he stayed until his resignation on January 22, 2021. (Ex. H-11).  His last performance review, for the six-month period ending August 31, 2020, was completed by Sergeant Benjamin Stewart, who was Khan's supervisor for approximately 2 months. (Ex. H -2 at Khan_HPD_270; Ex. I Stewart Depo., p. 31).

Plaintiff alleges that he complained about Sgt. Stewart to his next-level supervisor, Lt. Cheng Chen, sometime in August 2020. Defendant expressly denies that Plaintiff raised any allegation of harassment or discrimination to Lt. Chen (or to anyone else at the City). However, it is undisputed that Lt. Chen immediately granted Khan's request for a shift change, and Khan was reassigned to the supervision of Sergeant Stephen Hendrie effective August 22, 2020. (Ex. J: Assignment Information). Because Khan had only just transferred to Sgt. Hendrie's supervision at the time of the August 2020 performance review, Lt. Chen asked Sgt Stewart to complete that review. (Stewart Depo., p. 83). It is Khan's allegation that he then complained to Sgt. Hendrie (and possibly Lt. Chen) about the review, and Sgt. Stewart was then told to have no more contact with Khan.

## D. IAD investigated Khan's failure to investigate/report an accident and robbery

On September 14, 2020, a Westside Sergeant, Serguei Gromyko, completed a routine monthly audit of officer body worn camera ("BWC") videos. (Ex. K: Investigative Report at COH_KHAN 000964-65; *and see* Stewart Depo. at 94; Angelo Depo at 233-34). Gromyko observed that on August 3, 2020, Khan had failed to timely and properly investigate a report a robbery and hit-and run car accident and, in fact, had tried to talk the victim out of making any report at all. (Investigative Report at COH_KHAN 000964-65).

Sgt. Gromyko filed a complaint about Khan's behavior to IAD, and Sergeant Mark D. Contreras performed an investigation. (*See generally,* Investigative Report).

IAD's investigation revealed that on August 3, 2020, Khan was on patrol working the "early" night shift, from 10:00 p.m. to 6:00 a.m. (Ex. L: Rollcall; Khan Depo. at 63). At around 5:00 a.m., Khan visited Sgt. Faizure Rehman, who was off-duty working his

second job at a car lot in Khan's beat. (Investigative Report at COH_KHAN 000967). At 5:09, an individual approached Sgt. Rehman to report a car accident which had occurred a few blocks away at Bissonnet and 59. (*Id*. at 000968, 974; Ex. M: BWC Transcript at 2). Khan, who was still on shift, took the call and went with the complainant to the scene.

The complainant told Khan he had been driving with two ladies he picked up from Bissonnet street. (BWC Transcript at 3, 13). They had a fight and one of them put her hands over his eyes and mouth. *Id*. at 4, 5, 18. She also tried to pull the gear to put the car in park while it was running. *Id*. at 18. The complainant could not see anything and hit a silver SUV in front of him. *Id*. at 4-5, 7-8. The two ladies took the complainant's money and eyeglasses and jumped out of his car. *Id*. at 4-8, 13, 14. They ran into another car. *Id*. at 5. He tried to follow them, but lost them. *Id*. He told Khan he had the information of the other car who picked them up, but Khan did not take the information. *Id*. at 16. Khan stated, "That's not a crime. … you picked them up. You were fighting in the vehicle. … You should not have picked them up." *Id*. at 16-17.

Khan told the complainant he would be at fault for causing the accident and a crash report would cause problems with his insurance. *Id*. at 6-13. Khan also said he thought the complainant did not hit a vehicle, but rather a pole or a wall. *Id*. at 7, 9-10, 18. The complainant insisted, "I know I hit the car because there were nothing else, no wall or something. I was in the road." *Id*. at 18. Khan responded, "That's why don't pick up ladies from this road." *Id*.

Khan left the scene without providing the complainant a case number. (Investigative Report at 000966). At 5:40 a.m., Khan cleared the call as "information," which means he

talked to the complainant and did not intend to write a report. (Investigative Report at 000966; *and see* Khan Depo. at 64; Angelo Depo. at 171; Ex. R: DRH Hearing at 51).

Later that morning, Sgt. Rehman called Khan to see if he had completed the required reports of the incident. (Investigative Report at 000968). When Khan gave excuses why he did not believe a report was required, Sgt. Rehman "ordered him to complete the FSGI [Fail to Stop and Give Information], CRASH, and Robbery reports." *Id*. Khan completed the FSGI and CRASH reports but there is no record of him completing a separate Robbery report. (*See id.* at 000974-975; Ex. N: Investigation Summary at COH_KHAN 001049).

E.      **IAD determines that Khan violated HPD policy.**

Following the investigation by Sgt. Contreras, IAD Lieutenant Gordon MacIntosh-Beatson prepared an Investigation Summary concluding that Khan "failed to take action to gather information for an accident/incident report and instead cleared his call 'Information.'" *Id*. at 001048. Although Khan knew that a crime had occurred, "he failed to conduct a thorough investigation or gather details in order to document the incident fully." *Id*. at 001050. "Khan failed to complete an accident/incident report prior to the end of his shift," and only completed the report after he was expressly ordered to do so. *Id.* at 001049. Khan also "failed to list elements of the crime of robbery anywhere in the incident report once it was completed the following day." *Id*. at 001048.

Based on the findings of the investigation, Lt. MacIntosh recommended that violations be sustained against Khan as to the following HPD policies: G.O. 200-08, Conduct and Authority, Duty to Respond; GO 600-27, Preliminary and Follow Up Investigations; and G.O. 800-07, Criteria for Submitting Incident Reports. (Investigation

Summary at 1052; *and see* Ex. D, F, G). Westside Division Commander[1] David C. Angelo, Khan's third-level supervisor, signed off on the IAD Investigation Summary and adopted the recommendations on October 28, 2020. (Angelo Depo. at 39, 136, 140, 149).

## F.   The disciplinary review process is initiated, but not completed.

A sustained violation against an HPD officer triggers discipline. (Angelo Depo. at 144). In HPD, discipline ranges in seriousness from Category A (written reprimand) to Category E (15 to 90-day temporary suspension, involuntary demotion, or indefinite suspension). (Corrective Action Manual at Khan_HPD_49-50; Angelo Depo. at 79).

Decisions regarding police officer discipline are made by the Chief of Police, following a multi-step disciplinary review process. (Corrective Action Manual at Khan_HPD_42, 45; Angelo Depo. at 19-20, 30-32). In Khan's case, Cmdr. Angelo first determined the appropriate disciplinary category for each violation cited by IAD, using HPD's Corrective Action Manual as a reference. (Angelo Depo. at 22, 30, 77). It was Cmdr. Angelo's opinion that Khan's combined infractions fell under the Category C level (a 3 to 9-day temporary suspension). (*Id*. at 76, 79, 82; Ex. H-9: Discipline Process Worksheet at COH_KHAN 000720). Assistant Chief Wendy Baimbridge, the next supervisor in Khan's chain of command above Cmdr. Angelo, also agreed with the Category C recommendation. (COH_KHAN 000720; Angelo Depo. at 24, 141-42).

Next, an Employee Discipline Review Meeting[2] was held on November 19, 2020, between Khan, his current sergeant and lieutenant, and Cmdr. Angelo. (Discipline Process

---

[1] Formerly also referred to as the "Captain."
[2] Also referred to as a "Step Five Meeting."

Worksheet at COH_KHAN 000721). They discussed the results of the IAD investigation and the disciplinary recommendation. (Angelo Depo. at 41-42, 44, 128, 227-28).

On December 16, 2020, Khan's file was considered by HPD's Administrative Discipline Committee ("ADC"). (Discipline Process Worksheet at COH_KHAN 000725; Angelo Depo. at 26-27; Corrective Action Manual at Khan_HPD_41). The ADC recommended that Khan's offense be characterized at Category D, and that he be issued a 15-day suspension. (Discipline Process Worksheet at COH_KHAN 000721, 725).

Finally, Khan's file went to Chief of Police Art Acevedo. Chief Acevedo believed Khan's infraction was serious enough that indefinite suspension (termination) was under consideration. Chief Acevedo placed Khan on Relief of Duty at Home Status, with pay, effective January 11, 2021. (Ex. P: Relief of Duty Ltr.).

On January 21, 2021, a Disciplinary Review Hearing ("DRH") was held so that Khan could provide additional evidence for the Chief to consider before making a final decision. (Discipline Process Worksheet at 000721, 724; Ex. Q: Classified Disciplinary Review Hearing Notification; Ex. R: DRH Hearing). Prior to the DRH, Khan's union attorney, Mary Nan Huffman, sent Khan a letter advising him of his rights and informing him of the "variety of ways" that his case might be resolved (Ex.H: Khan Depo at 93-95 *and* Ex. H-8). Following the hearing, as alleged by Plaintiff in his EEOC Charge, "My Union Counsel[3] told me that my option was to take the punishment category D without

---

[3] At his deposition, Khan testified that this communication was not made by his Union Counsel, but by Union Representative Ray Hunt. *See* Khan Depo. at 96.

option of independent arbitration, resign, or get fired with additional infractions added to my profile including untruthfulness." (Doc. 13-1 at 2-4; Khan Depo. at 88).

## G.     Khan resigns and then files suit.

Plaintiff has acknowledged that he would have been able to appeal an indefinite suspension to an independent hearing examiner. (Khan Depo. at 95-96; Doc. H-8). *See also* Tex. Local Gov't Code §§ 143.120; 143.1016. Nonetheless, he chose to resign, effective January 23, 2021. (Khan Depo. at 96, 106; Ex. H-11). He received an honorable discharge from HPD, and no mention of the 2020 IAD investigation appears on his HPD Employee Resume. (Khan Depo. at 106-108; Ex. H-11).

On November 1, 2021, Khan filed a Charge of Discrimination with the EEOC. [Doc. 13-1]. In his Charge, Khan claimed that Sgt. Benjamin Stewart had discriminated against him based on his race, religion, and national origin. He also contended that he was constructively discharged based on protected class discrimination, and in retaliation for having made complaints of discrimination by Sgt. Stewart. The EEOC closed its investigation on December 19, 2022, and Plaintiff then filed this lawsuit. [Doc. 1, 13-2]

## IV.     ARGUMENT

### A.     Plaintiff failed to exhaust administrative remedies as to (1) his claims under the Rehabilitation Act and (2) the Title VII claims based on acts occurring prior to January 5, 2021, so those claims are barred.

A plaintiff's claims under the Rehabilitation Act are "subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII." *Smith v. Potter*, 400 Fed. Appx. 806, 811 (5th Cir. 2010); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. Unit A 1981). *And see* 29 U.S.C. § 794a(a)(1). Both Title VII and the Rehabilitation

Act require plaintiffs who wish to file suit in federal court to first exhaust their administrative remedies by filing a charge with the EEOC. *See Ernst v. Methodist Hosp. Sys.,* 1 F.4th 333, 337 (5th Cir. 2021); *Smith*, 400 Fed. Appx. at 811; *Prewitt*, 662 F.2d at 304. The EEOC charge must address all allegations which form the basis for the plaintiff's Title VII or Rehabilitation Act claims. Allegations that were not raised in the EEOC charge cannot be brought for the first time in federal court. *See Ernst*, 1 F.4th at 338-39 (affirming dismissal of claims for sex discrimination and retaliation when only race discrimination was alleged in the charge).

Here, although Khan did file a Charge of Discrimination with the EEOC, the charge did not allege discrimination on the basis of disability. *See* Doc. 13-1, pp. 2, 4. Therefore, Plaintiff's claim under the Rehabilitation Act is barred for failure to exhaust administrative remedies. *See Ernst*, 1 F.4th at 339; *Smith*, 400 Fed. Appx. at 811; *Prewitt*, 662 F.2d at 304. Likewise, Plaintiff's Title VII claim for color-based discrimination is also barred.

Plaintiff's other Title VII claims for discrimination, and the bulk of his claims for Title VII retaliation, are barred by that statute's administrative limitations period. Title VII mandates that a plaintiff file his charge with the EEOC within 180 after the alleged unlawful employment practice occurred, or within 300 days if the aggrieved person initially instituted proceedings with a State or local agency. 42 U.S.C. § 2000e-5(e)(1) *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). A discrete retaliatory or discriminatory act is time-barred if it is not filed within these time limits. *Morgan*, 536 U.S. 101, 109. Hostile work environment claims occurring outside the limitation period are also time-barred unless the plaintiff can establish a continuing violation. *See id*. at 113; *Heath*

*v. Bd. of Supervisors for Southern Univ. and Agr. and Mech. College*, 850 F.3d 731, 738 (5th Cir. 2017). To establish a continuing violation the plaintiff must show that "all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the [statutory] time period." *Morgan*, 536 U.S. at 113; *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 219 (5th Cir. 2004). Acts are part of the same unlawful practice only if "the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120; *Heath*, 850 F.3d at 740.

Plaintiff here filed his charge with the EEOC and the Texas Workforce Commission Civil Rights Division on November 1, 2021. [Doc. 13-1]. Any discrete acts of discrimination or retaliation occurring more than 300 days prior to that date (e.g., before January 5, 2021) are time-barred.

All the acts of discrimination alleged by Plaintiff occurred, if at all, during his supervision by Sgt. Benjamin Stewart. It is undisputed that Khan transferred from Stewart's supervision to the supervision of Sgt. Stephen Hendrie on August 22, 2020. (Ex. J at COH-KHAN 000748). One week later, Stewart completed Khan's last performance evaluation. (Khan Depo. at 32 and Ex. H-2 at Khan_HPD 270). Khan contends that on October 1, 2020, he complained to Lt. Chen about the evaluation and that Sgt. Stewart was then told to stay away from him. [Doc. 13-1, at 3]. There is no evidence of any interactions between Stewart and Khan after that date. Nor is there any allegation or evidence that any person other than Stewart discriminated against Khan.

Plaintiff contends Sgt. Stewart somehow influenced the BWC audit conducted by Sgt. Gromyko and the IAD investigation that stemmed from the audit, but he has no evidence to support that contention. To the contrary, Sgt. Stewart provided undisputed sworn testimony that he did not have any involvement with – and knew nothing about -- the audit, the complaint against Khan, the IAD investigation, or Khan's subsequent disciplinary process. (Stewart Depo. at 24-25, 38, 42-44, 51-52, 55, 86, 88, 91, 95-102).

The IAD investigation against Khan was completed on October 28, 2020, more than 2 months before the Title VII cut-off date. (Investigation Summary at COH_KHAN 001044). Likewise, all steps of the disciplinary review process were completed prior to January 5, 2021, except for the final review and decision by Chief Acevedo. (*See generally,* Discipline Process Worksheet).

There is no allegation or evidence that Sgt. Stewart influenced the decision by Chief Acevedo to place Khan on "At Home" status on January 11, 2021, the first alleged act which occurred within the statutory time-frame. [*See* Doc. 13, ¶ 38]. Sgt. Stewart did not attend the Disciplinary Review Hearing on January 21, 2021, and he was not involved in Khan's resignation the next day. (*See* DRH Notification). Because all the alleged discriminatory acts by Sgt. Stewart occurred, if at all, more than 300 days before Khan filed his EEOC Charge, all Plaintiff's Title VII discrimination claims are time-barred. Any Title VII claim for alleged retaliatory acts occurring prior to January 5, 2021 is also time-barred, and should be dismissed.

**B.** **The City is entitled to summary judgment on Plaintiff's claim for constructive discharge.**

Plaintiff contends he was constructively discharged on January 22, 2021. The evidence does not support such a claim. Constructive discharge is an "aggravated form of discrimination" *Green v. Brennan*, 578 U.S. 547, 576 (2016) (Alito, J., concurring). To prove constructive discharge, a plaintiff must demonstrate that his working conditions were so intolerable, "a reasonable employee would have felt compelled to resign." *Id.*, 578 U.S. at 555 (majority opinion). It is an objective standard. *See id.* at 576. There must also be "proof of a causal link between the allegedly intolerable conditions and the resignation." *Id.* at 563.

To determine whether a reasonable person would feel compelled to resign, the Fifth Circuit considers whether any of the following exist:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Sacks v. Texas S. Univ.*, 83 F.4th 340, 347 (5th Cir. 2023) (brackets orig.).

Here, there is no evidence or allegation of factors 1-5 or 7. While Plaintiff does allege that he was subject to harassment and humiliation from co-workers who mocked his accent, called him a "terrorist" and refused to ride with him, it appears all these acts occurred, if at all, prior to January 5, 2021 and are time-barred. Further, the acts alleged are not severe or pervasive enough that a reasonable employee in Khan's place would have felt compelled to resign. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.

2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.").

Plaintiff may take the position–not expressly alleged—that he was constructively discharged because he was put in a position where he had to either quit or be fired. This position would not be supported by the law of this Circuit. The Fifth Circuit repeatedly has held that "no constructive discharge took place when a reasonable employee had other options ... before choosing to leave his job and that a reasonable employee attempts resolution of employment concerns before quitting." *Caldwell v. Lozano*, 689 F. App'x 315, 320 (5th Cir. 2017) (internal quotations omitted).

Plaintiff here was not given an ultimatum to quit or be fired. Chief Acevedo never communicated to Khan that he had made a final decision of indefinite suspension, and there is no evidence that the Chief had, in fact, made such a decision. (*See* Khan Depo. at 96, 103-104).[4] Rather, the evidence supports that Khan was given the option "to take the punishment category D without option of independent arbitration, resign, or get fired with additional infractions added to my profile including untruthfulness." (Doc. 13-1 at 2-4; Khan Depo at 88). Additionally, Khan's Union Counsel advised him:

> Ultimately, it is your decision whether or not to accept any offer(s) made to you by the Chief. You do not have to accept any offer(s) made to you. You may instead exercise your right to appeal any discipline imposed against you to an Independent Third Party Hearing Examiner (Arbitration). Should you choose to appeal your case, the HPOU will continue to provide you with quality legal representation and will pay the costs of the arbitration. Your attorney will discuss the relative merits of your case with you so that you can

---

[4] To the extent Plaintiff contends he was told of the Chief's decision by Union Representative Ray Hunt, Defendant objects to this contention as inadmissible hearsay.

make an informed decision about which decision is in your best interests, however, the ultimate decision is yours.

(Khan Depo at 93-95 *and* Ex. H-8 at Khan_HPD_280).

Khan made the decision to not take a Category D without option of independent arbitration, nor to accept an indefinite suspension and appeal it through the administrative process to an Independent Hearing Examiner. (Khan Depo at 96). Instead, he resigned.

Khan did not exercise all available options to resolve his employment concerns before quitting. Therefore, there was no constructive discharge, as a matter of law. *See Caldwell*, 689 F. App'x at 320. The City is entitled to summary judgment on this claim.

**C.      The City is entitled to summary judgment on Plaintiff's claim for unlawful retaliation.**

Title VII protects employees from retaliation for having complained of discrimination. *See* 42 U.S.C. § 2000e–3(a). Where there is no direct evidence of retaliation, employees may establish Title VII claim with circumstantial evidence under the three-part *McDonnell Douglas* burden-shifting framework. *See Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024). Under the first step, the employee has the burden to establish a prima facie case of unlawful retaliation. *Id.* Second, if the employee meets his burden to show a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the disputed employment action. Although the burden of production shifts between the parties, the burden of persuasion remains continuously with the employee. *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). In the third and final *McDonnell Douglas* step, the burden shifts back to the

employee to show that the employer's stated reason is false and a pretext for illegal discrimination. *See Johnson*, 90 F.4th at 460-61.

In this case, Plaintiff's suit fails at the first *McDonnell Douglas* step, because Plaintiff cannot establish a prima facie claim that the City retaliated against him. Additionally, the City has legitimate non-discriminatory reasons for any disputed employment actions, and Plaintiff cannot demonstrate that those reasons are merely a pretext for discrimination.

### 1. No prima facie claim of retaliation.

A plaintiff cannot make a prima facie case of discrimination based on conclusory allegations, with no supporting facts or probative evidence to support them. *See Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 748 (S.D. Tex. 2014). To support a prima facie claim for retaliation, a plaintiff must present evidence of all the following: "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023). Plaintiff here cannot support any of the essential elements of a retaliation claim.

First, there is no evidence that Khan engaged in any act protected by Title VII. He did not make any claim of discrimination, harassment, or retaliation to the HPD's Administrative Dispute Resolution Section or to IAD. (*See* Khan Depo. at 46). Nor is there any evidence that any of Khan's supervising officers ever understood him to be making a claim of discrimination, harassment, or retaliation against Sgt. Stewart or anyone else.

Second, the City did not take any materially adverse action against Khan. To constitute unlawful retaliation, an employment action must be one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hudson*, 58 F.4th at 231. To be "materially adverse," an employment action must objectively worsen the employee's working conditions. *Id.* at 232. "The purpose of this objective standard is to separate significant from trivial harms and filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, … jokes, and occasional teasing." *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009). Plaintiff has not alleged any action by the City which meets this standard.

Finally, Plaintiff cannot show any causal link between his alleged protected activity and any alleged adverse action. To establish causation, an employee must establish that his protected activity was a but-for cause of the alleged adverse action by the employer. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). At a minimum, this requires a showing that the decision-maker for the adverse action was aware that the employee had engaged in protected activity. *See EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017). Plaintiff here cannot make such a showing.

Plaintiff alleges that, after Sgt. Stewart conducted Khan's performance evaluation in September 2010, Khan made a report of discrimination to Sgt. Stephen Hendrie.[5] (*See* Khan Depo at 17-18, 27-28, 45). Plaintiff does not contend that Sgt. Hendrie then retaliated

---

[5] Sometimes referred to, in Khan's deposition, as "Sgt. Henry Stevens." The City expressly denies any report of discrimination.

against him. Instead, he contends that others in HPD retaliated against him by investigating him, interrogating him, placing him on "At Home" status, and subjecting him to the disciplinary process that terminated with his resignation. *See* Doc. 13, ¶¶ 37-41, 88-89.

Plaintiff has no evidence that any of the persons involved in the investigation and disciplinary process knew he made a complaint of discrimination against Sgt. Stewart (or against anyone). (*See* Khan Depo. at 52, 92-93, 99-100, 112-13). Absent such evidence, Plaintiff cannot make a causal connection between the alleged protected complaint and the alleged adverse action(s) at issue in this case. *See EmCare*, 857 F.3d at 683.

Plaintiff seems to bring a "cat's paw" argument, that Sgt. Stewart somehow asserted influence over the rest of HPD to cause Khan's investigation and discipline. However, the Fifth Circuit repeatedly has held that a plaintiff pursuing a "cat's paw" theory of causation "must demonstrate that individuals with discriminatory animus 'had influence or leverage over the official decisionmaker.'" *Daywalker v. UTMB at Galveston*, No. 22-40813, 2024 WL 94297, at *11 (5th Cir. Jan. 19, 2024), *quoting Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). Khan cannot make such a demonstration here. (*See* Stewart Depo. at 24-25, 38, 42-44, 51-52, 55, 86, 88, 91, 95-102; Angelo Depo at 95). Plaintiff cannot establish a prima facie case of retaliation, as a matter of law.

### 2. <u>The City has a legitimate non-retaliatory reason for its actions.</u>

Even if Plaintiff could make a prima facie case of retaliation, the City has a legitimate non-retaliatory reason for investigating Khan and initiating the disciplinary process against him. The undisputed evidence is that Sgt. Gromyko submitted his complaint to IAD following a random body-worn camera audit initiated from HPD

headquarters. (*See* Investigation Report at COH_KHAN 000964-65; Angelo Depo at 233-34; Stewart Depo. at 94). The investigation revealed that Khan had violated three HPD policies by failing to conduct a thorough investigation at the scene of an accident and robbery, ignoring or distorting the facts of the incident, failing to submit the required reports by the end of his shift, and failing to document the elements of a robbery. (*See* Investigative Report; G.O. 200-01, § 4; G.O. 600-27, § 1; G.O. 800-07, § 3a).

Commander Angelo, Khan's third-line supervisor, believed the BWC video and IAD investigation showed "a derelection" of duty by Khan. (Angelo Depo at 82). He testified, "This is not the level of service I expect and the Houston Police Department expects of our officers to provide to our citizens." *Id*. at 199.

At the Disciplinary Review Hearing, Chief Acevedo expressed his opinion that Khan demonstrated a lack of judgment during the incident (DRH Hearing at 30-33). He stated that Khan's failure to put out a crime broadcast put the public and fellow officers at risk. *Id*. Succinctly, Khan "refused to do [his] job." *Id*. at 52. Accordingly, the City had a legitimate non-discriminatory reason for any disciplinary action that might have been taken against Khan, had he not voluntarily resigned.

Plaintiff has no evidence whatsoever that any of the City's actions were a pretext for discrimination or retaliation. The City is entitled to summary judgment on Plaintiff's Title VII claims. *See Johnson*, 90 F.4th at 460.

**D.     The City is entitled to summary judgment on Plaintiff's USERRA claims**.

"USERRA is a federal law that protects employees from being discriminated against by their employers because of their military service." *Garcia-Ascanio v. Spring Indep. Sch.*

*Dist.*, 74 F.4th 305, 309 (5th Cir. 2023). "USERRA's anti-discrimination provision prohibits an employer from denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment to a person on the basis of membership, application for membership, performance of service, application for service, or obligation of service." *Id.* USERRA also precludes employers from retaliating against an employee "by taking adverse employment action against that person because he or she has taken an action to enforce a protection afforded under USERRA." *Id.*; *and see* 38 U.S.C. § 4311(b).

Like Title VII, USERRA has a burden-shifting framework, although USERRA's has only two steps. In the first step, the employee has the burden to prove a prima facie case of discrimination or retaliation. *Garcia-Ascanio*, 74 F.4th at 309-10. In the second step, if the employee meets that burden, the employer has the burden to prove the affirmative defense that it would have taken the employment action at issue in the absence of the plaintiff's military status. *Id.* at 310.

### 1. No evidence of discrimination based on Plaintiff's military service.

To establish a prima facie claim for discrimination under USERRA, a plaintiff must present evidence to "prove that his or her membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action." *Id.* (internal quotation omitted); 38 U.S.C. § 4311(c). Here, Khan cannot show that his military status was the motivating factor for any action taken by the City.

*a)* ***No hostile work environment***

Plaintiff alleges he was harassed by co-workers who teased him about his combat-related PTSD. [Doc. 13, ¶ 47]. To support a claim for hostile work environment based on co-worker harassment, plaintiff must present evidence to show all the following: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his military status; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *See Watson v. FedEx Express*, Case No. 3:22-cv-01738-B-BT, 2023 WL 4534965, *5 (N.D. Tex. Jun. 26, 2023) (slip copy) (citing *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001)). There is no dispute that Khan is in a protected class by virtue of his being a veteran of the U.S. Marines. Even if he could present evidence to show that he was teased about his military status, however, Khan cannot support elements 4 and 5 of his hostile work environment claim.

It is well-settled that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" necessary to support a co-worker harassment claim. *See Watson*, 2023 WL 4534965 at *5 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) in the context of USERRA). Further, there is no evidence, or even allegation, that Khan reported harassment based on his military status in accordance with City policy, such that the City knew or should have known of the alleged harassment.

### *b) No adverse action*

In addition to co-worker harassment, Plaintiff also alleges that he suffered the following injuries as a result of his military status: "constructive termination, denial of promotion, loss of wages, job assignments, retirement savings, time in service of the Department, [and other, unspecified] benefits of employment." [Doc. 13, ¶ 49]. As with Title VII, a constructive discharge claim under USERRA occurs when, because of the employee's military status, "the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Garcia-Ascanio*, 74 F.4th at 311. For the reasons discussed above, this cannot be shown here. And there is no evidence that the City denied Khan any promotion, wages or job assignment, or that the City interfered with his retirement savings or other benefits – whether because of his military status or otherwise. The USERRA discrimination claim should be dismissed.

### 2. No evidence of retaliation for any protected action.

Plaintiff has not alleged that he took any action, whatsoever, to enforce any protection afforded under USERRA. As noted above, there is no evidence that he ever made a complaint that he was harassed or discriminated against because of his military status. Therefore, the USERRA retaliation claim must fail. *See* 38 U.S.C. § 4311(b); *Garcia-Ascanio*, 74 F.4th at 309.

### 3. The City would have taken its employment actions in the absence of Plaintiff's military status.

Finally, even if Plaintiff could present evidence to support a prima facie case under USERRA, the City is entitled to summary judgment on its affirmative defense that it would

have taken the employment actions at issue in the absence of Khan's military status. As discussed above, the evidence shows that Khan was investigated and in the pipeline for discipline because he violated multiple HPD policies. For this reason as well, the City is entitled to summary judgement on Plaintiff's USERRA claim. *See Garcia-Ascanio*, 74 F.4th at 310.

## CONCLUSION

WHEREFORE, Defendant City of Houston requests that the Court grant summary judgment in its favor on claims and causes of action asserted against in Plaintiff's Amended Complaint, with prejudice; award Defendant its costs and attorneys' fees; and grant Defendant all such other relief to which it is justly entitled, whether in law or in equity.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney

DEIDRA NORRIS SULLIVAN
Section Chief, Labor, Employment & Civil
Service

By:  /s/ *Marjorie L. Cohen*
Marjorie L. Cohen
Senior Assistant City Attorney
State Bar No. 24031960
Federal ID No. 34303
Marjorie.Cohen@houstontx.gov
Tel.: (832) 393-6457 (direct)
ATTORNEY-IN-CHARGE

CITY OF HOUSTON LEGAL
DEPARTMENT
P.O. BOX 368
Houston, Texas 77001-0368
Main: (832) 393-6491
Fax (832) 393-6259

**ATTORNEYS FOR DEFENDANT
CITY OF HOUSTON**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on July 19, 2024, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following:

Sean Timmons
TULLY RINCKEY PLLC
18722 University Blvd., Ste. 235
Sugar Land, TX 77459 STimmons@tullylegal.com

Michael Fallings     mfallings@fedattorney.com
Nathan Simmons     nzsimmons@gmail.com
TULLY RINCKEY PLLC
3420 Executive Center Drive, Suite 160
Austin, Texas 78731

*/s/ Marjorie L. Cohen*
Marjorie L. Cohen