## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IMRAN KHAN,
    *Plaintiff*,

v.

CITY OF HOUSTON, et al,
    *Defendants*.

No. 4:23-cv-00998

## PLAINTIFF'S OPPOSITION TO
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, Imran Khan, by and through her undersigned counsel, hereby respectfully opposes and responds to the Motion for Summary Judgment filed by Defendants, City of Houston, et al. There are material facts in dispute, which should allow this case to proceed to trial. In support thereof, Plaintiff submits the attached Opposition.

August 16, 2024

Respectfully submitted,

By: Nathan Simmons___
    Sean Timmons
    Managing Partner
    Texas Bar No.: 24067908
    Tully Rinckey, PLLC.
    18722 University Blvd, Suite 235
    Sugar Land, TX 77479
    (832) 241-5888
    stimmons@tullylegal.com

    Nathan Simmons
    Associate Attorney
    Texas Bar No. 24128701

Tully Rinckey, PLLC
3420 Executive Center Dr., Suite 160
Austin, Texas 78731
nsimmons@fedattorney.com

TABLE OF CONTENTS

I.      STATEMENT ON NATURE AND STAGE OF THE PROCEEDING p. 5
II.     STATEMENT OF THE ISSUES AT HAND p. 6
III.    STANDARD OF REVIEW p. 6
IV.     SUMMARY OF THE ARGUMENT p. 7
V.      ARGUMENT p. 8
VI.     CONCLUSION AND RELIEF p. 30

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

IMRAN KHAN,
    *Plaintiff,*

v.

                      No. 4:23-cv-00998

CITY OF HOUSTON, et al,
    *Defendants.*

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 56 and Local Rule CV-7(e),

Plaintiff, Mr. Imran Khan (hereinafter "Mr. Khan", "Khan", or "Plaintiff"), submits this

memorandum of points and authorities in support of his opposition to the Motion for

Summary Judgment filed by Defendants City of Houston, et al. (hereinafter "Defendants")

regarding his claims of race, national origin, color, and disability discrimination under Title

VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et. seq.*,

the Rehabilitation Act ("Rehab Act") of 1973, as amended, 29 U.S.C. § 701 *et. seq.*, and

Uniformed Services Employment and Reemployment Rights Act ("USERRA") of 1994,

38 U.S.C. § 4301, *et. seq.*

## I.      <u>STATEMENT ON NATURE AND STAGE OF THE PROCEEDING</u>

Pursuant Local Rule CV-7 and the Court's Procedural Rule 7, Plaintiff Khan has

brought forth the complaint at hand against his former employer, the Houston Police

Department ("HPD"). Plaintiff asserts in his complaint that he was discriminated against,

retaliated against, and subjected to a hostile work environment based on his race, color, national origin, disabilities, veteran status, and protected activity, culminating in his constructive discharge. Plaintiff brings the complaint under Title VII, the Rehab Act, and USERRA. For the reasons detailed below, Plaintiff is entitled to the denial of summary judgment because of multiple genuine disputes of material fact. This case is set for Docket Call on October 11, 2024. The discovery deadline has expired, and this response opposing the motion for summary judgment is timely filed as per the order granting an extension to respond. *See* ECF 44.

## II. STATEMENT OF THE ISSUES AT HAND

The Plaintiff Administratively Exhausted All Claims Asserted in Complaint and None Are Time Barred at this time. The Plaintiff has sufficient evidence to support a prima facie case of discrimination based on race, national origin, color, disability, and veteran status under USERAA and Title VII of the Civil Rights Act of 1964. The Plaintiff has sufficient evidence to show he was subjected to a hostile work environment culminating in a constructive discharge following his complaints against Sgt. Stewart pursuant to department policies. The Plaintiff has sufficient evidence to support a prima facie case of retaliation based on his first complaint made against Sgt. Stewart. The Plaintiff has sufficient evidence of pretext about defendant's alleged nondiscriminatory reasons.

## III. STANDARD OF REVIEW

A court shall grant summary judgement if the movant shows that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed.

R. Civ. P. 56(a). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ("[w]here the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

In ruling on a motion for summary judgment, the Court must view the facts, and the inferences to be drawn therefrom, in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The moving party is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *See Matsushita* at 587; *see also Martin v. Locke*, 659 F. Supp. 2d 140, 145 (D. D.C. 2009). Thus, "[s]ummary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party. *See Anderson* at 248.

## IV.   SUMMARY OF THE ARGUMENT

A. 1.  Plaintiff Administratively Exhausted All Claims Asserted in Complaint and None Are Time Barred

B. 2.  Plaintiff has sufficient evidence to support a prima facie case of discrimination based on race, national origin, color,  disability, and veteran status

C. 3. Plaintiff has sufficient evidence to show he was subjected to a hostile work environment culminating in a constructive discharge

D. 4. Plaintiff has sufficient evidence to support a prima facie case of retaliation

E. 5. Plaintiff has sufficient evidence of pretext regarding defendant's alleged nondiscriminatory reasons

## V.    <u>ARGUMENT</u>

### A. Plaintiff has Sufficient Evidence to Support a Prima Facie Case for his Title VII and Rehabilitation Act Discrimination Claims

In its Motion, Defendant fails to meet its burden of that no genuine issue of material fact exists. Defendant asserts that Plaintiff failed to produce enough evidence to establish prima facie cases for his race and age discrimination claims under the McDonnell Douglas burden-shifting framework." *See* ECF 41. However, contrary to Defendant's arguments, Plaintiff has established both age and race discrimination under the McDonnell Douglas burden shifting framework.

#### a. Administrative Exhaustion and Time Bar

Title VII and the Rehab Act are subject to the same procedural requirements, which include exhausting their administrative remedies by filing an EEOC charge before bringing the claims to the federal court. See Ernst v. Methodist Hosp. Sys., 1 F.4th 333, 337 (5th Cir. 2021); see also Smith v. Potter, 400 Fed. Appx. 806, 811 (5th Cir. 2010). While the bases for the claims must be asserted to the EEOC during the administrative process, the court "liberally" construes the claims somewhat broadly from the EEOC charge, not solely restricted to the scope of the EEOC charge alone but instead within the larger scope of the EEOC investigation that could reasonably grow out of the charge, especially if filed pro se. See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir.1970); see also

Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006). A plaintiff is not required to plead facts establishing a prima facie case, but his complaint must give the defendant "fair notice of the basis for [his] claims." See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511–12, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); see also Melvin v. Barr Roofing Co., 806 F. App'x 301, 306–10 (5th Cir. 2020).

Here, the scope of the EEOC charge and investigation reasonably allow for claims of hostile work environment, discrimination, and retaliation on the basis of color and hostile work environment and retaliation on the basis of disability. For color, Plaintiff pled in his EEOC charge that he was filing based on race (Asian-American) and national origin (Pakistan), both of which were also reasonably associated with his skin color which could visibly perceived. See EEOC Charge; Chief Angelo Depo. Tr. 46:25-47:4 ("He was a darker colored individual, olive skin, olive tone if you will."). In his charge, Plaintiff does not assert that he told people he was Asian American or Pakistani, even though he did. See EEOC Charge. However, it was also perceived from looking and interacting with him that led him to be targeted for his color, as well as the other protected bases. See EEOC Charge. Thus, color reasonably can be construed from his EEOC charge in the investigation.

As for his disability, Plaintiff also asserted in his EEOC charge that Stewart was "projecting me [Plaintiff] as an idiot" and was "mocking my [Plaintiff's] speaking style." See EEOC Charge. In his amended complaint, Plaintiff disclosed that his speaking style was targeted not only because of his Pakistani accent but also Plaintiff's "his service related TBI and concussion" which made it difficult for Plaintiff to be understood and "led to more

ridicule and mockery." *See* ECF 13 at ¶ 68. The discriminatory and retaliatory mockery served as one of many reasons why Plaintiff requested to be transferred away from Stewart. See Khan Depo. Tr. 13:13-19. Plaintiff provided documentation showing his diagnosis of TBI and PTSD, including his disability rating from the Department of Veterans Affairs ("VA") and doctor's notes discussing how those medical conditions substantially affect his daily activities of concentrating and sleep. See Khan_HPD_902-911. Thus, disability also can be reasonably construed from the EEOC charge.

As for the time bar issue, the "'unlawful employment practice' therefore cannot be said to occur on any particular day." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073–75, 153 L. Ed. 2d 106 (2002). Here, Stewart, even after transfer, still carried on with his harassment, including doing Plaintiff's appraisal in 2020 and affecting the investigation in a negative manner for Plaintiff.

### b. Plaintiff has Sufficient Evidence to Support Prima Facie Title VII (Race, National Origin, Color) Discrimination

The *McDonnel Douglas* Framework consists of a three-step analysis to determine if, by circumstantial evidence, a plaintiff can establish discrimination under Title VII. Circumstantial evidence raises an inference of discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The first step of *McDonnel Douglas* is for the plaintiff to establish a prima facie case of discrimination. *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023). To show a prima facie case, "[t]his framework has been described as requiring a plaintiff

to show (1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances supporting an inference of discrimination." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). An adverse employment action clearly affects the terms and conditions of plaintiff's employment and includes disciplinary actions. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011). To establish a claim of disparate treatment on discrimination grounds, a plaintiff must show that her employer has "treated [a] particular person less favorably than others because of" a protected trait. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

Here, Defendant does not dispute that Plaintiff meets the first element for prima facie race and national origin discrimination. *See* ECF 23 at ¶ 5. And as previously discussed, Plaintiff visibly had a skin color of "olive tone", meaning that Plaintiff can also meet the first element for a prima facie color discrimination. See Angelo Depo. Tr. 46:25-47:4. Therefore, Plaintiff will address Defendant's argument for the second, third, and fourth elements of prima facie race, national origin, and color discrimination.

 i. <u>Plaintiff was Qualified to be a Police Officer</u>

To satisfy the qualified element of prima facie discrimination, an employee can show through preponderance that he was qualified for the job by showing that he had been performing his job satisfactorily at the time of the adverse action. See McDonnell Douglas, 411 U.S. at 802. Preponderance of the evidence means that, based on the record, the claim is more likely than not to have happened. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

Here, before the investigation began, Plaintiff had been hired by Defendants on July 17, 2017, as a police trainee until he was promoted all the way up to permanent Police Officer 108.0 on July 17, 2018. See Khan_HPD_248, 250. From then on, Plaintiff never received less than "Effective" Factor Degrees of Performance (which is the same as "satisfactory") for each of his five appraisals through September 2, 2020. See Khan_HPD_270-274; see also Khan Depo. Tr. 32:5-20. His last appraisal during that period, in fact, was carried out by Stewart, who rated Plaintiff as "Effective" overall and in 4 of the 5 factors, with the other factor being "Strong". See Khan_HPD_270. Therefore, even when Plaintiff was being subjected to a hostile work environment and the discriminatory and retaliatory investigation cited by Defendant which started in September 2020, Plaintiff was performing at a "satisfactory" level.

ii.   <u>Plaintiff Produced Sufficient Evidence of Being Subjected to Adverse Actions</u>

Contrary to what Defendants assert, Plaintiff was subjected to multiple adverse actions. "To be sure, the statute prohibits discrimination in ultimate employment decisions—"hir[ing]," "refus[ing] to hire," "discharg[ing]," and "compensation"—but it also makes it unlawful for an employer "otherwise to discriminate against" an employee "with respect to [her] terms, conditions, or privileges of employment."" See Hamilton v. Dallas Cnty., 79 F.4th 494, 501 (5th Cir. 2023). An employee subjected to a hostile work environment experiences an adverse employment action if the harassment is severe or pervasive enough to change the terms and conditions of employment. See Eyob v. Mitsubishi Caterpillar Forklift Am., Inc., 745 F. App'x 209, 215 (5th Cir. 2018).

iii.   <u>Plaintiff Produced Sufficient Evidence of Being Treated Worse Than Others</u>

<u>Based on His Race, National Origin, and Color</u>

For the purposes of summary judgment, a plaintiff must show that he was "was treated less favorably than others similarly-situated." *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, (2000)). To be "similarly situated", a plaintiff must be treated less favorably than a comparator "under nearly identical circumstances" and also does not share the plaintiff's protected class like race. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259–60 (5th Cir. 2009). However, "nearly identical" is not the same as "identical." *Id*. Instead, the comparators must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id*. The reason for an employment decision cannot be based on "after-acquired knowledge" that was not available at the time that the employment decision was made. Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 231 (5th Cir. 2015).

Here, Angelo readily admits in his deposition, when asked about if there were any people he sustained discipline against that had the same race as Khan, that, "My recollection are none, but I don't recall the specific numbers. I don't recall. I don't recall any other people that shared Officer-- Officer Khan's race at that time." See Angelo Depo. Tr. 75:24-76:4. Right there, Angelo admits that no people in Khan's protected class of race (and likely national origin and color) received punishment

Therefore, Plaintiff has clearly shown that Hohman can be considered a comparator for the purposes of proving Plaintiff's prima facie discrimination case and surviving motion

for summary judgment.

### B. Hostile Work Environment and Constructive Discharge

Plaintiff can also establish both that he was subjected to a hostile work environment that culminated in his constructive discharge.

#### a. Plaintiff was Subjected to a Hostile Work Environment

For the hostile work environment claim under Title VII, the Rehab Act, and USERRA, the plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on protected characteristics; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action. *See EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007); *see also Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 306–10 (5th Cir. 2020). When an employer takes prompt remedial action to protect an employee claiming harassment, the employer may, but is not entitled to, avoid Title VII liability only if the prompt remedial action is reasonably calculated to end the harassment. *See Hockman v. Westward Communications, LLC*, 407 F.3d 317, 329 (5th Cir.2004) (quoting Nash v. Electrospace Sys., Inc., 9 F.3d 401, 402 (5th Cir.1993)). When considering the viability of a continuing violation theory for an employee's claim of hostile work environment, the court does not include the factor considering whether the plaintiff should have filed her complaint earlier. See, e.g., Pegram v. Honeywell, Inc., 361 F.3d 272, 279 (5th Cir. 2004) (noting that Morgan "clarified the limits of the continuing violations doctrine," and not stating or applying a notice factor); see also Heath v. Bd. of Supervisors for S. Univ. &

Agric. & Mech. Coll., 850 F.3d 731, 738–39 (5th Cir. 2017), as revised (Mar. 13, 2017).

Here, Plaintiff satisfied the first element because he belongs to protected groups of Pakistani/Asian American race, Pakistani national origin, dark/olive skin color, veteran status, and had disabilities. See 42 U.S.C. § 2000e, et seq.; see also 29 U.S.C. § 701 et. Seq.; see also 38 U.S.C. § 4301, et. seq. Defendants do not dispute the race, national origin, and veteran status of Plaintiff. See ECF 23 at ¶¶ 5, 7. Of the responsible management officials, at least Angelo admits to perceiving Plaintiff's skin color as olive. See Angelo Depo. Tr. 46:25-47:4. And as explained previously, Plaintiff's identified TBI and PTSD qualify as disabilities.

For the next element, Plaintiff has testified that he complained about Stewart's behavior, which included the mocking of his accent and other derogatory remarks, multiple times to management officials like Chen and Hendrie, ultimately requesting a transfer away from Stewart because of the discrimination. See Plaintiff's Response to Interrogatories at p. 11-12; see also Khan Depo. Tr. 13:13-19. Stewart, in his deposition, surprisingly did not deny that Khan did transfer away from him. See Stewart Depo. Tr. 80:20-81:15. Yet the harassment continued, with Sgt. Stewart marking down Plaintiff in the September 2020 evaluation. See Plaintiff's Response to Interrogatories at p. 10-11; see also Khan_HPD_270. Thus, Plaintiff was subjected to harassment that he notified to management and that Plaintiff expressed he did not welcome.

The harassment was also based on protected characteristics like Plaintiff's accent. Specifically, Plaintiff's speaking style had a heavy Pakistani accent, which Stewart made fun of and thus covers national origin, race, and color. See EEOC Charge; see also

Plaintiff's Response to Interrogatories at p. 11-12. Additionally, Plaintiff's speaking style was also affected by his TBI and PTSD, which intersects with Plaintiff's disability. See EEOC Charge; see also Plaintiff's Response to Interrogatories at p. 11-12. And Plaintiff testifies that Stewart also made fun of Plaintiff's veteran status, mocking Plaintiff's fear of explosions brought on by Plaintiff's service-connected PTSD. See ECF 13; see also Plaintiff's Response to Interrogatories at p. 11-12.

For the fourth element, the terms, conditions, and privileges were affected by the harassment. First, Defendants' failure to reasonably prevent the harassment even after Plaintiff reported it denies Plaintiff the condition of working in a non-discriminatory, non-retaliatory environment. See Plaintiff's Response to Interrogatories at p. 11-12. Second, after Plaintiff was subjected to a discriminatory and retaliatory investigation, Plaintiff has his official duties relieved on January 11, 2021, another condition of employment affected. See Khan_HPD_119-121. And when Khan was constructively discharged on January 22, 2021, Chief Art Acevedo wrote, "No rehire." See Khan_HPD_187. This negatively impacts Khan's ability to seek future employment, a term that was affected. See Khan Depo. Tr. 108:8-21

Finally, the fact that Sgt. Stewart still was allowed to appraise Khan also shows that, despite taking the step to transfer Khan away from Stewart, Defendants still did not act reasonably to prevent further harassment. Additionally, the investigation began shortly after Khan's transfer, which allowed Stewart to still affect Khan even after the transfer. Thus, Defendants failed to take reasonable steps to ensure Khan would no longer be harassed.

### b. Plaintiff was Constructively Discharged

Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge claim. See Pennsylvania State Police v. Suders, 542 U.S. 129, 143–52, 124 S. Ct. 2342, 2352–57, 159 L. Ed. 2d 204 (2004). Limitations period for Title VII constructive discharge claim started to run on date of employee's resignation. Green v. Brennan, 578 U.S. 547, 554–64, 136 S. Ct. 1769, 1776–82, 195 L. Ed. 2d 44 (2016); see also Delaware State College v. Ricks, 449 U.S. 250, 262, n. 16, 101 S.Ct. 498, 66 L.Ed.2d 431 ("limitations perio[d] should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes.").

With hostile work environment shown, Plaintiff can establish that he was subjected to a constructive discharge. Plaintiff was offered three options: 1) accept category D punishment without a chance to challenge despite the pretextual nature of the investigation, 2) resign, and 3) get fired. See Khan Depo. Tr. 88:1-93:10. Based on the advise he received, Plaintiff realized that accepting the suspension was not a real option, as it would force on to his record that Plaintiff was found to be untruthful, which would prevent him from moving up or to another job in the same field. Id. Thus, he was forced to take the one that allowed him the chance to challenge without incurring further infractions. Therefore, Plaintiff was forced to quit, which counts as constructive discharge.

### C. Defendant's Proffered Explanation Behind Not Selecting Plaintiff is Pretext

Under *McDonnell Douglas* framework, the burden shifts to defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. "[T]o meet its burden of production under McDonnell Douglas, an employer must articulate a

nondiscriminatory reason with **'sufficient clarity'** to afford the employee a realistic opportunity to show that the reason is pretextual." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir.2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). The Court is "not to assess the employer's credibility or the truthfulness of its reason at this stage of the inquiry." *Id.* at 318. However, providing inconsistent reasons may be enough to show pretext and survive summary judgment. Reeves, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105. "If the trier of fact does not believe the employer to have given a truthful account of its decision, it is reasonable to infer that the most likely explanation is the one the employer cannot admit—that it acted for retaliatory or discriminatory reasons." Ameristar Airways, Inc. v. Admin. Review Board., 650 F.3d 562, 569-70 (5th Cir. 2011). Thus, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Ameristar Airways, Inc. v. Admin. Review Bd., 650 F.3d 562, 570 (5th Cir. 2011); see also Grelle v. City of Windcrest, 539 F. Supp. 3d 657, 660–69 (W.D. Tex. 2021). The reason for an employment decision cannot be based on "after-acquired knowledge" that was not available at the time that the employment decision was made. Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 231 (5th Cir. 2015).

A plaintiff "may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Head v. City of Columbus Light & Water Dep't*, 746 F. App'x 389, 392 (5th Cir. 2018) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). Plaintiff must present

"substantial evidence" of pretext. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (citing *Laxton* at 579). "An explanation is false or unworthy of credence," and thus pretextual, "if it is not the real reason for the adverse employment action." *Id.* (citing *Laxton* at 578). To show pretext, a plaintiff must rebut each discrete reason given by the employer. *See Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010). The reason for an employment decision cannot be based on "after-acquired knowledge" that was not available at the time that the employment decision was made. See Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 231 (5th Cir. 2015).

## D. RETALIATION

For retaliation claims brought under all three statutes, a prima facie case consists of four elements: (1) Plaintiff's participation in protected activity; (2) the employer's awareness of the protected activity; (3) subsequent materially adverse action against the employee; and (4) a causal connection between the adverse action and the protected activity. *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006). An adverse employment action in discrimination claims include only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" while adverse employment actions in retaliation claims only need to be based upon whether the action would reasonably dissuade a person from pursuing a discrimination charge. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). Temporal proximity can be used to establish that connection without further evidence so

long as it is close enough together. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).

Here, Plaintiff did engage in multiple protected activities. Plaintiff complained to Chen multiple times of the discrimination he faced because of Stewart, ultimately requesting a transfer away from Stewart because of the discrimination. See Plaintiff's Response to Interrogatories at p. 11-12; see also Khan Depo. Tr. 13:13-19. Even still, the harassment continued, with Sgt. Stewart marking down Plaintiff in the September 2020 evaluation. See Plaintiff's Response to Interrogatories at p. 10-11; see also Khan_HPD_270. The fact that Sgt. Stewart still was allowed to appraise Khan also shows that, despite taking the step to transfer Khan away from Stewart, Defendants still did not act reasonably to prevent further harassment. Additionally, the investigation that led to Plaintiff's constructive discharge started less than two months after Plaintiff complained about Stewart's discrimination, thus allowing for temporal proximity. See Khan_HPD_310-313, 340-342; see also Plaintiff's Response to Interrogatories at p. 10-12. And the investigation led to the relief of Plaintiff's official duties and then constructive discharge, which more than covers for the adverse actions for retaliation.

### E. USERRA

#### a. USERRA's Evidentiary Burdens on Summary Judgment

USERRA prohibits employers from denying uniformed service members "retention in employment, promotion, or any benefit of employment . . . on the basis of . . . membership, . . . performance of service, . . . or obligation." See 38 U.S.C. § 4311(a). Employers violate USERRA if an employee's "service …in the uniformed services is a

motivating factor in the employer's [adverse] action, unless the employer can prove that the action would have been taken in the absence of such membership, service . . . or obligation for service." See 38 U.S.C. § 4311(c)(1). The statute should be "liberally construed" for the protection and benefit of military service members. See Coffy v. Republic Steel Corp., 447 U.S. 191, 196, 100 S. Ct. 2100, 65 L. Ed. 2d 53 (1980). Congress deliberately replaced the Supreme Court's interpretation of USERRA's predecessor statute, under which an employee's military status was required to be "the sole motivation for the employer's action." See Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002); see Bradberry v. Jefferson Cnty., Tex., 732 F.3d 540, 545, 551 (5th Cir. 2013) ("By referring to a 'motivating factor,' the statute does not textually suggest that military service be the sole factor." Rather, "if one reason for the employer's actions was [an employee's] 'membership, service, application for service, or obligation for service in the uniformed services,' then that reason was a motivating factor."). Under the statutory test, "military service is a motivating factor for an adverse employment action if the employer relied on, took into account, considered, or conditioned its decision on the employee's military related absence or obligation." See Erickson v. U.S. Postal Serv., 571 F.3d 1364, 1368 (Fed. Cir. 2009) (internal quotation marks and citations omitted).

Once Plaintiff produces evidence from which a jury could find that Plaintiff's military status or conduct was a motivating factor in the adverse employment action, the employer must "establish as an uncontroverted fact that it would [have taken the action] even if he had not been a member of the [military]." See Leisek, 278 F. 3d at 899 (citing Gummo, v. Vill. of Depew, 75 F.3d 98, 106-07 (2d Cir.1996)); see Mayeaux v. Houston

Indep. Sch. Dist., 986 F. Supp. 2d 842, 848 (S.D. Tex. 2014); Robinson v. Morris Moore Chevrolet-Buick, Inc., 974 F. Supp. 571,576 (E.D. Tex. 1997); see 38 U.S.C. § 4311(c)(1) (placing burden on employer to prove that action would have been taken in absence of military status). Therefore, in contrast with Title VII cases analyzed under the McDonnell Douglas framework in which the burden remains on the plaintiff to show pretext, in USERRA cases *"the burden [is] on the employer to show lack of pretext*." See Velázquez-García, 473 F.3d at 16 (emphasis added). Obtaining judgment as a matter of law on this type of affirmative defense is an "*uphill climb*" for a defendant. See Mayeaux, 986 F. Supp. 2d at 848 (emphasis added) (once plaintiff shows jury could find military absences a motiving factor, defendant can succeed at summary judgment stage "by showing same jury that could find military absences a motivating factor would have to find that such absences were not the motivating factor").

**B. There is overwhelming evidence that Plaintiff's veteran status was a motivating factor in his investigation and resulting termination**

"Under USERRA, discriminatory motivation of the employer may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses. Sheehan v. Dept. of the Navy, 240 F. 3d. 1009, 1014 (Fed. Cir. 2001). The court may consider "all record evidence," including the employer's

"explanation for the actions taken." Id."  Leisek v. Brightwood Corp., 278 F. 3d at 900.

1. **Non-service members were not terminated for more serious offenses**

Plaintiff was punished far more severely than others who had been accused of similar conduct. Angelo admits that the allegations against Khan for which he was investigated was fairly run of the mill, stating, "This was actually a pretty unremarkable case that wouldn't glean any additional attention from my bosses that I've experienced." See Angelo Depo. Tr. 127:10-12. Angelo further admitted, "This wasn't a use of force case, this wasn't a discharge of a firearm case. Nobody got hurt. This is an administrative investigation into an allegation of an employee not doing what they're supposed to do. It's as simple as that." See Angelo Depo. Tr. 127:20-25. Angelo, when asked if he could recall if he suggested anyone else be given Category C discipline, admitted, "I recall at least one that I recommended a category C for, obviously this one…I don't recall specifically how many outside of this case that I recommended a category C for." See Angelo Depo. Tr. 81:11-19. In fact, the one case he recommended a more severe discipline category for (Category D) was far more severe than the case against Khan, since the case where Angelo recommended Category D discipline involved excessive force hurting a civilian. See Angelo Depo. Tr. 129:2-130:11. Instead, Angelo uniquely targeted Khan for the most severe discipline despite not recommending as a severe a punishment for others that had similar charges against them, many of whom were not veterans or service members.

2. **Defendant has not met its burden as a matter of law**

1. **City Failed to Establish Lack of Pretext**

Whereas Defendants focus solely on the investigation, the issue is not whether it

had grounds to constructively discharge Khan but whether military status was also *a* factor in the decision to investigate and ultimately force Khan to quit. *See Mayeaux*, 986 F. Supp at 848. In *Mayeaux*, the court also indicated that the jury will be entitled to consider the spectrum of events which began with the pretextual investigation--itself a discriminatory act prohibited under USERRA. *See* id. at n.3. The decision in *Mayeaux* is directly on point:

> Given that Mayeaux was an at-will employee, it did not even need that good cause to fire her. HISD could terminate Mayeaux for any reason—or no reason at all—so long as the termination was not based on a status protected from discrimination under federal law. That is where HISD runs into a problem because there is direct evidence—indeed, evidence that comes from HISD—that Mayeaux's military absences were a factor in the adverse employment action. That evidence is the initial report issued by HISD's Inspector General.

See Mayeaux, 986 F. Supp at 848-849.

Specifically, the judge in Mayeaux focused on the fact that there were revisions made in the employer's own documentation of its investigation. The first included references to plaintiff's military leave; the second report did not do so. The employer also suspected the employee had been dishonest about her military leave:

> There is also a suggestion in the IG report that Mayeaux's claimed military absences may not have been legitimate. Of course, evidence that an individual was lying about military absences would be a basis for termination. But the IG report was unable to conclude that Mayeaux was

claiming absences for days she was not serving, and HISD does not argue that was a basis for her termination. *And the discussion about this inquiry into the military absences only furthers the conclusion that a jury could find that Mayeaux's military absences were a motivating factor in her termination.*

*See Mayeaux*, 986 F. Supp at 848-849.

While the jury might accept HISD's explanations in *Mayeaux*, there were competing inferences which would allow a verdict in plaintiff's favor, *i.e.*, that the grounds were merely a contrived pretext and thus summary judgment was improper. *See Mayeaux*, 986 F. Supp at 848-849; *See also Evans v. City of Houston*, 246 F.3d 344, 355-56 (5th Cir. 2001) (noting that backdating a demotion notice and issuing a memorandum of demotion with four separate dates cast the defendant's nondiscriminatory rationale in doubt and went "straight to the heart of the issue of pretext"); see also *Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 842 (E.D. Tex. 2009) (finding that jury could conclude that employer's rationale for terminating plaintiff's employment was pretextual in light of employer's "inconsistencies and shifting explanations, along with the timing of [defendant's] changing rationale*"); see also Canamar v. McMillin Tex. Mgmt. Servs.*, LLC., 2009 U.S. Dist. LEXIS 136713, *7 (W.D. Tex. 2009) (magistrate recommendation subsequently adopted, Mar. 17, 2010) (magistrate recommendation subsequently adopted, Mar. 17, 2010).

There is similar evidence in this case. Whereas Defendant repeatedly claims that Plaintiff was *solely forced to quit* for dishonesty and failure to include other facts in the report, the records reveal that the *sole* grounds for the start of the investigation was

Plaintiff's failure to file the incident report in a timely manner. See Khan_HPD_310-313, 340-342. Only in the course of the investigation into the allegation against Khan did Gromyko review the body cam footage and allege that Khan convinced the complainant not to file a report, and then Angelo unilaterally deemed Khan untruthful about why Khan failed to take action regarding the incident. See Khan_HPD_307; see also Angelo Depo. Tr. 158:1-21. Indeed, Angelo admits, "If Officer Khan would have received supervisor approval on was it August 3rd, 2020 before he went home on shift to say hey, I have this report, can I do it the next night, we probably wouldn't have been here." See Angelo Depo. Tr. 158:1-5. Angelo further admitted, "If Officer Khan would have done what was required of him, and that was complete a police report for a potential robbery or a theft, a hit and run and a crash report, we would not be here today talking, period." Thus, dishonesty cannot have been the basis for the employer's decision to investigate Khan.

Defendant's systematic mischaracterization of the origin of the investigation and basis of the termination did not begin with this suit. Despite simply conducting a monthly audit of the body worn cameras, Gromyko deliberately inserts his beliefs by bringing in a dishonesty narrative by describing Khan as "tries to convince reportee that he did not hit another vehicle, but rather collided with a "building or a pole". Officer Khan also completely ignores the reportee's explicit attempts to report a robbery." See Khan_HPD_307. Angelo continues this depiction of Khan as salesman telling the reportee not to file a complaint in his investigative summary, but to justify sustaining such a narrative, Angelo cites from the video Khan telling complainant, "So, it's totally up to you. I mean, you can go to a mechanic, uh you can ask them how much would it cost? You can

talk to insurance. And do you still want a police report? You have 7 days. You can stop by the station and do a CRASH report. The only problem with a CRASH report. It's not a problem but the thing is your vehicle will be listed as 'accidented' in the system." See COH_KHAN_1044-1052. The comment has since been spun to be the alleged evidence that Khan intentionally convinced a reportee to not file a report, despite Khan giving directions on how to file a complaint later. HPD's documents from 2020 show a deliberate effort to weave a dishonesty narrative *into* the failure to file a report on time and create the appearance that facts surrounding Plaintiff's alleged untruthfulness began to surface with the body cam issue. Instead, Angelo used the investigative summary to catastrophize an informational comment into Khan being dishonest, in an effort to justify the proceedings against Khan for an admittedly minor procedural issue. Angelo himself admits, "This was actually a pretty unremarkable case that wouldn't glean any additional attention from my bosses that I've experienced." See Angelo Depo. Tr. 127:10-12. And critically, Angelo admits, "I don't recall specifically how many outside of this case that I recommended a category C for." See Angelo Depo. Tr. 81:17-19.

Merely identifying grounds to force Plaintiff to quit is grossly inadequate to obtain summary judgment on Defendant's affirmative defense. See Mayeaux, 986 F. Supp at 850 (citing Leisek, 278F.3d at 900 (rejecting summary judgment because the employer "has not established as an uncontroverted fact" that it would have terminated plaintiff even without his National Guard obligations); cf. Branton v. City of Dallas, 272 F.3d 730, 739 (5th Cir. 2001) (noting with respect to the similar Mt. Healthy defense for First Amendment retaliation claims brought by public employees that it "is for a jury to resolve

. . . whether the employer would have made the same employment decision in the absence of the protected [conduct]")). In a USERRA case, Defendant cannot obtain summary judgment by requiring Plaintiff to prove pretext but must prove lack of pretext as a matter of law. See Mayeaux, 986 F. Supp at 851 ("HISD treats its burden on this affirmative defense as the same one that exists under the McDonnel Douglas framework in which an employer need only identify a legitimate, non-discriminatory reason for the termination in order to shift the burden back to the plaintiff…. But USERRA is different. A plaintiff's only burden is to produce evidence from which a jury could find that military service was a motivating factor in an employment action; the employer than has the burden… to show lack of pretext via an affirmative defense") (internal citations omitted); Murphy v. Radnor Twp., 542 Fed. Appx. 173, 175 (3d Cir. 2013) ("USERRA requires that Radnor show a legitimate reason for not hiring Murphy that is "so compelling" and so meagerly contested" that there is no genuine dispute that Murphy would not have been hired regardless of his future military obligations.")  Under these facts, Defendants are not entitled to summary judgment.

## 2.  "Cat's Paw Liability" Defeats Summary Judgment as a Matter of Law

The United States Supreme Court in *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011) held that an employer may be liable for retaliation even if there was no evidence of bias on the part of the final decisionmaker if that decisionmaker took into account a biased negative statement or evaluation about the plaintiff by someone not directly involved in the challenged employment decision. *Staub* directly addressed whether the employer could be liable when the manager responsible for the adverse

employment action decision relied in part on a supervisor's animus-driven performance evaluation, even if that supervisor was not part of the decision proper.

The Supreme Court rejected "a hard-and-fast rule" that an independent investigation by the decisionmaker breaks the causal link, reasoning: "[I]f the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action (*by the terms of USERRA it is the employer's burden to establish that*), then the employer will not be liable. But the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id. at 1193* (emphasis added).

Here, Angelo admits that he possibly talked with Stewart before or as part of the investigation into Khan's allegation of failure to act. See Angelo Depo. Tr. 70:21-71:3. In fact, Angelo admits when asked if direct supervisors provided input for Angelo's disciplinary recommendations, "That would certainly be a part of – a part of recommending discipline, correct, or factoring into the decision for recommending discipline along with the infraction or infractions, i.e. policy violations themselves." See Angelo Depo. Tr. 60:12-20. Stewart would likely then be allowed to provide input regarding the discipline for Plaintiff since Stewart was the direct supervisor before the investigation began. See Plaintiff's Response to Interrogatories at p. 11-12; see also Khan Depo. Tr. 13:13-19. Considering that Angelo's investigative summary trumps up statements by Khan as persuading people from filing complaints when those statements are clearly for information purposes, the far more likely explanation for the investigation and then constructive

discharge is that Stewart, with his discriminatory animus, influenced other management officials to target Khan.

### 3. Affirmative defense fails as a matter of law where City does not terminate non-military police officers for cause

Despite overwhelming evidence of pretext (see above), this Court need not rely on pretext to deny Defendant's motion. This Court can simply find that a fact issue exists with respect to whether Defendant similarly punishes or otherwise constructively discharges other employees for cause or whether it singled out Plaintiff for termination because of his military service. Plaintiff incorporates the evidence and arguments above which demonstrate HPD's disparate treatment of Plaintiff compared to others who are service members, including punishing Plaintiff more severely than any other employees who were not veterans. Because there are fact issues concerning whether Defendants in fact even constructively discharge employees for similar violations of policy, it has not demonstrated as an uncontroverted fact that Plaintiff's military status was not a factor in the adverse investigation and resulting constructive discharge.

## VI.    CONCLUSION AND RELIEF SOUGHT

Based upon the reasons set forth herein, and, accepting the evidence in this case in alight most favorable to the Plaintiff and accepting all reasonable inferences as true, and in the interest of justice, Mr. Khan respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment and allow this matter to proceed to a jury trial on the material disputes in this case.

August 16, 2024

Respectfully submitted,

*/s/Nathan Simmons_____*

Nathan Simmons
Associate Attorney
Texas Bar No. 24128701
S.D. Texas ID No. 3751563
Tully Rinckey, PLLC
3420 Executive Center Dr., Suite 160
Austin, Texas 78731
(512) 225-2825
nsimmons@fedattorney.com


Sean Timmons
Managing Partner
Texas Bar No.: 24067908
Tully Rinckey, PLLC.
18722 University Blvd, Suite 235
Sugar Land, TX 77479
(832) 241-5888
stimmons@tullylegal.com


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition to Defendant's Motion for Summary Judgment, and the attached Order was served on August 16, 2024, via the Court's Electronic Filing System upon the following:


Robert Green
Texas Bar No.24106014
David.goode@usdoj.gov
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Telephone: (512) 916-5850
Fax: (512) 916-5854


                                        /s/Nathan Simmons_____
                                        Nathan Simmons