Case 4:23-cv-00998   Document 58   Filed on 11/19/24 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
November 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IMRAN E. KHAN, § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-00998 |
| § | |
| CITY OF HOUSTON, § | |
| Defendant. § | |

# MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion for Summary Judgment filed by Defendant City of Houston (Dkt. 41). Having carefully reviewed the motion, response,[1] reply, and applicable law, the Court **GRANTS** the motion.

## I.   FACTUAL BACKGROUND

The following facts are taken from the summary judgment record in the light most favorable to Imran Khan ("Khan"), the nonmovant. Khan is a U.S. Marine Corps veteran

---

[1] Plaintiff filed an Opposed Motion to Supplement Response to Motion for Summary Judgment (Dkt. 46). As the City acknowledges, "[s]ubstantively, the supplemental response is identical to Plaintiff's original response." (Dkt. 47 at pp. 1 – 2). As such, the Court exercises its discretion under Federal Rules of Civil Procedure 15(d) and 6(b) and **GRANTS** the motion. *See Jung-Hoon Yoon v. Garg,* No. 23-20519, 2024 U.S. App. LEXIS 13818, at *13-14 (5th Cir. June 6, 2024) (Under Rule 5(d), a motion to supplement "should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action."); *McCarty v. Thaler*, 376 Fed. Appx. 442, 443 (5th Cir. 2010) ("[It] … remains a question of the court's discretion whether to grant any motion to extend time under Rule 6(b).").

who suffers from post-traumatic stress disorder ("PTSD") and traumatic brain injury ("TBI") as a result of his service. (Dkt. 13 at p. 3). Khan is from Pakistan and of Asian-American heritage. (*Id*. at p. 4). Upon his honorable discharge, Khan joined the Houston Police Department ("HPD") as a police officer. *Id*. While working for HPD, Khan "faced ridicule, torment, and mockery from his fellow officers and superiors" based on his race, national origin, color, disability, and veteran status. *Id*. Khan complained about his superior Sergeant Benjamin Stewart ("Sgt. Stewart") contributing to this behavior and requested to switch units. (*Id*. at p. 5). His request was fulfilled. *Id*. Later, Khan again reported Sgt. Stewart to superiors for discriminatory behavior that continued after he switched units. (Dkt. 13 at p. 5).

While working as an officer, Khan failed to report an incident ("the Robbery"). (*Id*. at p. 13). Khan was "approached by a civilian who claimed he was involved in a vehicle accident at a different location." (*Id*. at p. 5). The complainant told Khan that he had gotten into a fight with two passengers and struck another vehicle, after which the passengers robbed him and fled. *Id*. Khan left the scene without providing the complainant a case number and cleared the call as information—meaning, "he talked to the complainant and did not intend to write a report." (*Id*. at p. 13). The next day, a superior requested that Khan complete three reports related to the call, one of which was a separate robbery report. *Id*. Khan completed two reports but did not complete the robbery report. *Id*.

A Sergeant later completed "a routine monthly audit of officer body worn camera [] videos." (Dkt. 41 at p. 11). During this audit, the Sergeant discovered that Khan had failed to timely and properly report the Robbery. *Id*. The Sergeant filed a report on and HPD performed an investigation into Khan's failure to report. *Id*. Based on the findings of the investigation, it was recommended that violations be sustained against Khan as to three HPD policies. (*Id*. at p. 13). One of Khan's supervisors "signed off on the … Investigation Summary and adopted the recommendations." (*Id*. at p. 14). These sustained violations triggered discipline, and the Chief of Police determined that "Khan's infraction was serious enough that indefinite suspension (termination) was under consideration." *Id*. On January 11, 2021, the Chief of Police placed Khan on Relief of Duty at Home Status, with pay. *Id*. As a result of the subsequent disciplinary proceedings, Khan decided to resign. (*Id*. at p. 16).

Khan filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 1, 2021, alleging the City discriminated and retaliated against him as an employee. *Id*.  Now, Khan brings six claims against the City of Houston ("the City") as his employer under three different statutes. (Dkt. 13). Under Title VII of the Civil Rights Act of 1964, Khan brings claims against the City for discrimination based on race, discrimination based on national origin, discrimination based on color, retaliation, and hostile work environment. He alleges that he suffered harassment and ridicule from his superiors and colleagues for his darker skin tone, his being from

Pakistan, and his Asian-American descent. Further, Khan alleges that the City was motivated by his race, national origin, and color to investigate his failure to report the Robbery. He also alleges that the City's investigation and disciplinary measures were taken in retaliation for Khan's reporting of Sgt. Stewart's discriminatory behavior. Finally, Khan brings a hostile work environment claim based on his superior's harassment and involvement in the City's investigation. Additionally, Khan brings a claim for discrimination under the Uniformed Services Employment and Reemployment Rights Act of 1994, alleging he suffered harassment and constructive termination motivated by his status as a veteran. Finally, Khan brings claims for retaliation and hostile work environment under the Rehabilitation Act of 1973. He alleges that the City retaliated against Khan through its disciplinary actions for reporting Sgt. Stewart's disability discrimination. Khan alleges such ridicule created a hostile work environment.

## II.      LEGAL STANDARD AND APPLICABLE LAW

**A.      Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Miranda v. Navistar, Inc.*, 23 F.4th 500, 503 (5th Cir. 2022). To survive summary judgment, the nonmovant must

"present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015).

The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, the Court must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

**B.     Title VII of the Civil Rights Act of 1964**

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits "discharg[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff can prove intentional discrimination under Title VII through either direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). Direct evidence is evidence which, if believed, proves the fact without inference or presumption.

*Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). When race discrimination claims are based on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

C.  **Uniformed Services Employment and Reemployment Rights Act of 1994**

The Uniformed Services Employment and Reemployment Rights Act ("USERRA") "is a federal law that protects employees from being discriminated against by their employers because of their military service." *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir. 2008) (citation omitted). "USERRA's anti-discrimination provision prohibits an employer from denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment to a person on the basis of membership, application for membership, performance of service, application for service, or obligation of service." *Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004) (citing 38 U.S.C. § 4311(a)).

D.  **Rehabilitation Act of 1973**

The Rehabilitation Act of 1973 ("Rehab Act") provides protection from discrimination based on disability to federal employees. 29 U.S.C. § 701 *et seq.* "An individual claiming discrimination under the Rehabilitation Act must show that he (1) is an 'individual with a disability,' (2) was 'otherwise qualified' for the job in question, (3)

'worked for a program or activity receiving Federal financial assistance,' and (4) 'was discriminated against solely by reason of her or his disability.'" *Aguillard v. Mukasey*, 295 Fed. Appx. 619, 622 (5th Cir. 2008) (citing *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997)).

### III. ANALYSIS

Khan's claims for color discrimination under Title VII, as well as his retaliation and hostile work environment claims under the Rehab Act, are dismissed for failure to exhaust. Khan's remaining claims cannot be supported by any actions alleged to have occurred outside of the actionable period governed by his filing of the EEOC charge. Specifically, the harassment, ridicule, and investigation that Khan alleges he suffered as a result of his his employer's discrimination all occurred prior to January 5, 2021, and cannot be considered by the Court when assessing his remaining claims under Title VII and USERRA. The Court finds Khan is unable to demonstrate that the City's legitimate, non-discriminatory reason for proceeding with his disciplinary action is pretext. Accordingly, the Court finds that all of Khan's remaining claims are appropriate for summary judgment.

### A. Procedural Faults

Khan's claim for disability discrimination under the Rehab Act, claim for color discrimination under Title VII, and certain of his claims based on conduct occurring outside of the actionable period must be dismissed due to procedural faults. First, Khan failed to exhaust his administrative remedies for his disability discrimination claim under

the Rehab Act and his color discrimination claim under Title VII. Additionally, any of Khan's claims based on alleged activity occurring prior to January 5, 2021, are time barred because these actions fall outside of the 300-day limitation for EEOC charges.

    *i.*    *Exhausting Remedies*

The Court finds that Khan has failed to exhaust the administrative remedies for his pending claims of color and disability discrimination because Khan failed to include these claims in his EEOC charge. Accordingly, both claims must be dismissed.

The Rehab Act establishes "a private right of action subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII." *Smith v. Potter*, 400 Fed. Appx. 806, 811 (5th Cir. 2010) (quoting *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981)). "Before suing, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). "To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge." *Id*. For these purposes, the Fifth Circuit "construe[s] the EEOC charge in its broadest reasonable sense." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018). Accordingly, Khan's claims under Title VII or the Rehab Act can only include "those allegations that are 'like or related to those allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission.'" *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)) (cleaned up).

Here, Khan did not check the boxes on his EEOC charge for discrimination based on "color" or "disability." (Dkt. 13-1 at p. 2). "In some fact scenarios, the Fifth Circuit has held that a plaintiff did not exhaust his or her administrative remedies when the plaintiff failed to check the appropriate box on the EEOC Charge form." *Torres v. Gulf Coast Jacks, Inc.*, No. 4:21-cv-00019, 2022 U.S. Dist. LEXIS 187569, at *6 (S.D. Tex. Oct. 13, 2022). However, this failure does not necessarily preclude the claims of color and disability discrimination from being contained in the EEOC charge. *See Ollie v. Plano Indep. Sch. Dist.*, 565 F.Supp.2d 740 (E.D. Tex. 2007). Khan has exhausted his administrative remedies only "[i]f, by looking to *either* the factual allegations *or* the checked boxes," a color or disability discrimination claim "could be reasonably expected to grow out[] of the allegations in" the EEOC charge. *Id.* at 743 (emphasis added); *see also Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). The Court finds these claims fail to do so.

### 1.　Color Discrimination

The Court finds that Khan's claim for color discrimination is not sufficiently related to the factual allegations in his EEOC charge. Khan included in his charge the following, in relevant part:

> "I believe that I was retaliated against for engaging in a protected activity and discriminated against because of my Race (Asian-American), National Origin (Pakistani), and Religion (Muslim) in violation of Title VII of the Civil Rights Act of 1964, as amended."

(Dkt. 13-1 at pp. 2 – 4). Khan argues that, by "filing based on race (Asian American) and national origin (Pakistan)," he alleged sufficient facts to construe discrimination based on color. (Dkt. 46-2 at p. 10). Specifically, Khan asserts that both his race and national origin were "reasonably associated with his skin color which could [be] visibly perceived." *Id*.

However, the Fifth Circuit recognizes color discrimination and racial discrimination as distinct claims. *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 n.2 (5th Cir. 2015) ("Though we have never explicitly recognized "color" as a separate, unlawful basis for discrimination by employers, the text of Title VII is unequivocal on the matter."). As such, the Court is not persuaded that Khan alleged sufficient facts to give rise to a color discrimination claim solely because he alleged discrimination based on race and national origin.

Further, the fact that Khan's "olive skin" tone could be "visibly perceived" does not bolster his argument that the color discrimination allegations could reasonably grow out of the facts alleged in the EEOC charge. *See* (Dkt. 46-2 at p. 10). Given that none of Khan's factual allegations mention his skin tone—and that he failed to check the "discrimination based on color" box—Khan's color discrimination lawsuit is not within the scope of his EEOC charge. Accordingly, the

Court finds that Khan has failed to exhaust his remedies for his color discrimination claim under Title VII.

### 2. Disability Discrimination

The Court finds that Khan's claim for disability discrimination is not sufficiently related to the factual allegations in the EEOC charge. In relevant part, Khan writes in his EEOC charge:

> "Here are a few examples of the harassment I had been subjected to by the Sgt. Benjamin Stewart up until my constructive discharge:
>
> 1. I was isolated at the station because Sgt. Benjamin Stewart was projecting me as an idiot.
> […]
> 4. I overheard Sgt Stewart mocking my speaking style on police scenes.

(Dkt. 13-1 at pp. 2 – 4). Khan argues that these allegations support a finding that a claim for disability discrimination is within the scope of the EEOC charge. (Dkt. 46-2 at p. 10). However, Khan relies on his amended complaint to supplement these facts, pointing to his TBI and PTSD. (*Id.* at p. 11). Specifically, Khan argues that "his speaking style was targeted not only because of his Pakistani accent but also [his] 'service related TBI and concussion.'" (*Id.* at p. 10). None of these allegations were included in the EEOC charge. *See* (Dkt. 13-1 at p. 3).

The Court does not find that alleging a superior was "projecting [Khan] as an idiot" and "mocking [his] speaking style" is sufficient to support a disability discrimination claim. Khan did not describe or allude to any disability in his EEOC

charge—in fact, he explicitly connects these behaviors to his race and national origin, as detailed above. (Dkt. 13-1 at pp. 3 – 4). The Court finds that Khan has not sufficiently exhausted his remedies for his disability discrimination claim under the Rehab Act. Accordingly, the Court holds that such must be dismissed.

### ii. Administrative Limitations Period

The Court finds that Khan's allegations of acts occurring prior to January 5, 2021, are time barred because Khan is unable to demonstrate a continuing violation that occurred within the actionable period. An EEOC "charge must be filed within 300 days after the alleged unlawful practice occurred." *Garrett v. Judson Indep. Sch. Dist.*, 299 Fed. Appx. 337, 343 (5th Cir. 2008). Accordingly, Khan is time barred from bringing allegations of acts that occurred more than 300 days before Khan filed his charge on November 1, 2021. *See* (Dkt. 13-1 at p. 3). As such, any activity allegedly occurring before January 5, 2021, cannot be considered in this suit. However, Khan asserts that the alleged discrimination qualifies as a continuing violation with events after January 5, 2021, and should therefore be considered by this Court. (Dkt. 46-2 at p. 11).

"The continuing violation theory relieves a plaintiff of establishing that all of the complained-of-conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 351 (5th Cir. 2001). However, the Fifth Circuit has made clear that claims "alleging discrete acts are not subject to the continuing violation

doctrine." *Heath v. Bd. Of Supervisors for the S. Univ. & Agric. & Mech. College*, 850 F.3d 731, 737 (5th Cir. 2017). Specifically, hostile environment claims are considered to be "different in kind from discrete acts." *AMTRAK v. Morgan*, 536 U.S. 101, 115 (2002). So— while a "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" requiring that the party "must file a charge within…300 days of the date of the act or lose the ability to recover for it"—a hostile environment claim may survive under the continuing violation theory. *Id*. at 110.

In so far as Khan brings claims for discrimination and retaliation under Title VII against the City, these claims are subject to the 300-day deadline to file the EEOC charge. Accordingly, any allegations against the City for discriminatory or retaliatory actions prior to January 5, 2021, are time barred. However, Khan's hostile work environment claim under Title VII is potentially subject to the continuing violation theory as discussed above. As long as Khan filed his "complaint while at least one act which comprises the hostile work environment claim is still timely, 'the entire time period of the hostile environment may be considered by a court for the purpose of determining liability.'" *Hartz v. Adm'rs. of Tulane Educ. Fund*, 275 F.App'x 281, 289 (5th Cir. 2008) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

While Khan's complaint and response to the pending motion are hard to parse at times, it is clear that Khan's first allegation of an action taking place within 300 days of the EEOC charge is his being placed on an "At Home" status on January 11, 2021, as a

result of his disciplinary proceedings. (Dkt. 13 at p. 6). Khan has not alleged that Sgt. Stewart influenced this decision. *See* (*id*.) Given that Khan's hostile work environment claim under Title VII is based solely on Sgt. Stewart's actions, and none of Sgt. Stewart's alleged actions occurred within 300 days of Khan's filing of his EEOC charge, this claim is time barred. Accordingly, the Court dismisses Khan's hostile work environment claim under Title VII.

**B.      Summary Judgment**

For the above reasons, the Court only considers Khan's allegations of constructive discharge when assessing his remaining claims: for discrimination under USERRA, for race discrimination under Title VII, for national origin discrimination under Title VII, for retaliation under Title VII, and for hostile work environment under Title VII. The Court holds that summary judgment is appropriate for the remainder of Khan's claims because— even if he were able to demonstrate a prima facie case of retaliation under Title VII or meet his burden to prove discrimination under USERRA—Khan cannot demonstrate a genuine issue as to whether the City's legitimate, non-discriminatory motivations are mere pretext. As such, summary judgment is appropriate for Khan's claims under Title VII and the City's affirmative defense under USERRA.

*i.     Title VII*

Khan's remaining claims under Title VII are supported by the City's allegedly discriminatory discipline of Khan. The Court finds that, even if Khan can demonstrate a

prima facie case for these claims, he is unable to demonstrate a genuine issue of material fact under the last step of the *McDonnell Douglas* framework. Specifically, no genuine issue exists as to whether the City's legitimate, non-retaliatory reasons for its disciplinary measures towards Khan are mere pretext. As such, this claim is appropriate for summary judgment.

Under the modified *McDonnell Douglas* approach, the plaintiff has the initial burden of making a prima facie showing of discrimination or retaliation under Title VII. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005). For purposes of this analysis, the Court assumes without finding that Khan is able to demonstrate a prima facie case. Where the plaintiff is successful in presenting a prima facie case of retaliation, the burden of production shifts to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). "If defendant meets that burden, 'the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet [their] ultimate burden of persuasion on the issue of intentional discrimination.'" *Lay v. Singing River Health Sys.*, 694 F. App'x 248, 253 (5th Cir. 2017) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

        1.    **Legitimate Non-Retaliatory Reason**

Assuming arguendo that Khan is able to demonstrate a prima facie case, the City bears the burden of production to demonstrate a legitimate, non-retaliatory reason for its disciplinary measures towards Khan. "The defendant may meet this burden by presenting evidence that 'if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996)). The defendant's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. App'x. 865, 868 (5th Cir. 2010) (per curiam). "If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quotation omitted).

Here, the Court finds that the City has provided evidence which sufficiently demonstrates that the adverse actions towards Khan—namely, the disciplinary measures regarding Khan's failure to report the Robbery—were taken as a result of his violation of three HPD policies "by failing to conduct a thorough investigation at the scene of an accident and robbery, ignoring or distorting the facts of the incident, failing to submit the required reports by the end of his shift, and failing to document the elements of a robbery."

(Dkt. 41 at p. 26). As Khan himself explains, the City's adverse action was triggered by it "simply conducting a monthly audit of the body worn cameras." (Dkt. 46-2 at p. 7). The City meets its burden of production for demonstrating these nondiscriminatory reasons by attaching to its motion the Investigation Report, the Investigative Summary, six HPD general orders, a transcript of the video of the traffic stop at issue, and various depositions. *See* (Dkt. 41); (Dkt. 42). [2] Accordingly, the Court finds that the City has met its burden in establishing a legitimate, non-retaliatory reason for the City's adverse employment action.

## 2. Evidence of Pretext

The City has provided sufficient evidence to show it predicated its disciplinary action on a legitimate, nondiscriminatory reason—now, Khan can only avoid summary judgment by "adduc[ing] evidence that [the City's] proffered reason" for its disciplinary action "was merely a pretext" for discrimination. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001). "This burden now merges with the ultimate burden of persuading the court that [Khan] has been the victim of intentional discrimination. [Khan] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation

---

[2] The Fifth Circuit has held that, "[a]lthough the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible…, the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 MOORE'S FEDERAL PRACTICE - CIVIL ¶ 56.91 (2017)). These attachments satisfy this standard.

is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981)

The Court finds that Khan is unable to meet this burden. In response to the pending motion on this point, Khan argues that "there are multiple contradictions behind why actions were taken against Khan, including why the investigation into him began." (Dkt. 46-2 at p. 20). However, Khan does not point to any evidence demonstrating the City's alleged contradictions, nor does he describe with any specificity the allegedly varied reasons the City gave for acting against Khan. *See* (Dkt. 46-2). This conclusory statement is insufficient to meet Khan's burden under the *McDonnell Douglas* framework and does not give rise to a genuine issue of material fact as to whether the City's legitimate, non-discriminatory reason for its adverse employment action is pretext. Accordingly, the remainder of Khan's claims under Title VII are appropriate for summary judgment.

    iii.    *Discrimination Under USERRA*

The Court finds there is no genuine issue as to whether the City would have taken disciplinary action towards Khan in the absence of his status as a veteran. As such, the City's affirmative defense under USERRA is appropriate for summary judgment.

Under USERRA, an employer is liable for an adverse employment action where "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action." *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 547 (5th Cir. 2013). However, USERRA

"provides employers with an affirmative statutory defense: An employer is not liable 'if it "can prove that the action would have been taken in the absence of such [military status].""'" *Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305, 310 (5th Cir. 2023) (quoting *Bradberry*, 732 F.3d at 547) (alteration in original). The Fifth Circuit recently determined that this mixed-motive affirmative defense applies where, as here, the alleged adverse action is a constructive discharge. *Id*. at 311. Ultimately, Khan has the burden under USERRA "to prove the prohibited reason was a 'motivating factor' in an employment decision," and the City must then "prove … that the same decision would have been made without that reason." *Bradberry*, 732 F.3d at 545 n.3. The Court finds that—even if Khan were able to meet his burden under USERRA—the City is entitled to summary judgment on this statutory affirmative defense.

Here, there is no genuine issue as to whether the City would have taken disciplinary action against Khan in the absence of his military status. As discussed above, the City has articulated with specificity the three policies that Khan violated, and which lead to the disciplinary action. (Dkt. 41 at p. 26). Further, Khan himself explains that "the records reveal that the *sole* grounds for the start of the investigation was [his] failure to file the incident report in a timely manner." (Dkt. 46-2 at p. 27) (emphasis in original). The City, as discussed above, has pointed with sufficient specificity to Khan's violations of HPD policy as the motive for its disciplinary action towards Khan. In this way, there is no genuine issue as to whether the City would have disciplined Khan for his failure to report

19 / 20

the Robbery had he not been a veteran. Accordingly, summary judgment is appropriate for this claim.

### IV.  CONCLUSION

Khan's claims for color discrimination under Title VII, as well as his retaliation and hostile work environment claims under the Rehab Act, are dismissed for failure to exhaust. For the reasons described above, the Court finds that the remaining claims are appropriate for summary judgment. Accordingly, the City's Motion for Summary Judgment (Dkt. 41) is **GRANTED** and all other pending motions are **DISMISSED** as **MOOT**.

SIGNED at Houston, Texas on November 19, 2024.

                                                                    _____
                                                                    GEORGE C. HANKS, JR.
                                                                    UNITED STATES DISTRICT JUDGE